THE CENTRAL RAILROAD AND BANKING COMPANY OF GEORGIA *et al.*, plaintiffs in error, *vs.* SAMUEL N. PAPOT *et al.*, defendants in error.

1. As a general rule, in the absence of any agreement to the contrary, dividends due on stock follow the ownership thereof.

2. Where a firm contracted to construct a number of miles of railroad, and on their completion to receive certain stock in payment therefor, and where, before the work was completed, some of the stock was transferred to the firm, who received and disposed of it through their agents, correspondence between such agents and the president of the contracting railroad company, was admissible to show the terms upon which it was delivered by the company and received by the firm, in advance of the time contemplated by the contract.

3. The president of the railroad company was not a competent witness to prove certain negotiations and agreements concerning the stock, between himself and a member of the firm since deceased, although he testified that his railroad had been previously leased by another company, to which he applied as friend of the deceased partner, and not officially, for an issuing of the stock.

4. Nor was it competent to prove by a director in the railroad company, representations made by the deceased partner in the course of such negotiations, although the witness stated that he acted in such negotiations as attorney of the two companies, and not as a director of the one leased.

5. A letter from the firm to the president of the railroad company, treating a certain part of the work as virtually completed, proposing to deliver it and to receive stock in proportion, and to give bond for the completion of the balance, was admissible. It was not an offer of compromise.

Stock. Dividends. Witness. Evidence. Principal and agent. Before Judge HILL. Bibb Superior Court. October Adjourned Term, 1876.

The following, taken in connection with the decision, sufficiently reports this case:

Papot swore that Ketchum & Hartridge were brokers, and were the agents of Shorter, Papot & Co., (of which firm complainants were survivors) authorized to receive stock for that firm, sell, and deposit the proceeds to their credit. Holt, as appeared from the evidence, was president of the Southwestern Railroad. The Central Railroad Company became the lessee of that road, and ratified the present contract.

The principal question in the case was, whether any allowance was to be made defendant on account of delivering the stock mentioned in the decision before the contract of labor had been completely fulfilled.

The jury found for complainants.   Defendants moved for a new trial, on the following among other grounds :

1. Because the court rejected certain letters and replies which were written by Holt to Ketchum & Hartridge, and *vice versa*, during the pendency of the contract, offered for the purpose of showing on what terms complainants, through their agents, received the stock.   Two of these letters were especially insisted upon and their rejection complained of, to-wit :

"JANUARY 30, 1872.

"MESSRS. KETCHUM & HARTRIDGE, Savannah :

"*Gents—*

\*    \*    \*    \*    \*    \*    \*    \*    \*

"Messrs. Shorter, Papot & Co. agreed to pay interest of two months on whatever amount of stock may be issued 1st February, and interest on the residue up to the completion of their contract.   You will perceive that I must retain stock enough in my hands to guard against any contingency, and issue according to filing of orders.

"Yours truly,      WM. S. HOLT, President."

"SAVANNAH, January 31, 1872.

"WILLIAM S. HOLT, Esq., President Southwestern Railroad Company, Macon, Ga. :

"*Dear Sir*—In reply to your favor of the 30th instant, we beg to say that your orders as stated by you are as we understand it, *i. e.*, we are now entitled to but 2,430 shares, the 210 to be retained until completion of said road, etc.

\*    \*    \*    \*    \*    \*    \*    \*    \*

Messrs. Shorter, Papot & Co., will settle with you for the interest when you come to a final settlement, (you retaining stock sufficient to secure you) or we will pay it for them if you insist upon it.

"Yours very truly,

"KETCHUM & HARTRIDGE."

2. Because the court rejected the following testimony offered by defendants : We propose to prove by W. S. Holt,

who was at the time the president of the Southwestern Railroad, that at the request of Shorter, now dead, at the time one of the firm of Shorter, Papot & Co., and for the benefit of said firm and as the friend of Shorter, he applied, not as president, to the Central Railroad, for an issue of the stock of the Southwestern Railroad, under the written contract, to relieve them from their then embarrassment, before the said Shorter, Papot & Co. had completed their contract and were entitled under it to said issue, and that the Central Railroad agreed to make this advance on his request, provided Shorter, Papot & Co. would pay interest on such advance stock, for the time it was so advanced; to which Shorter, Papot & Co., afterwards, through Shorter, agreed to, and the request was afterwards consummated with Ketchum & Hartridge as agents of Shorter, Papot & Co., on the faith of this agreement.

3. Because the court erred in rejecting the following evidence of Alexander R. Lawton, to-wit : That while the negotiation was pending between Shorter, Papot & Co., and the Central and Southwestern Railroad Companies for the transfer of the four thousand four hundred shares preferred stock in the Vicksburg and Brunswick Railroad, as set out in complainants' bill, and before the same was consummated, he had personal and confidential interviews with Shorter, of the firm of Shorter, Papot & Co., as to the financial and pecuniary condition of the Vicksburg and Brunswick Company, and its outstanding debts ; he had this interview at the direction of the president of the Central Railroad to see whether the Central Railroad could make this contract—get possession and control of the Vicksburg and Brunswick Railroad, without any risk of loss; he was at the time the attorney of the Central Railroad, and had this interview as such attorney. He was also a director in the Southwestern Railroad, but he was not acting as such in this interview, nor did he have anything to do with making this contract, one way or the other ; this was no part of his business—his

duty, and the part he took in the matter, was to simply ascertain and report whether the railroad companies he represented as attorney, the Southwestern and Central, could safely make this contract.

In that interview, Shorter told him that the Vicksburg and Brunswick Railroad Company owed no debt—there were no debts against, no liens or encumbrances on it of any character which would increase the risk of any loss by the company he represented beyond the amount it agreed to pay, and that it might safely make the trade.

The court ruled out the whole of this evidence on the ground that the witness was at the time one of the directors of the Southwestern Railroad, one of the parties to the contract, and also the attorney of the Central Railroad Company, and Shorter the party with whom this interview was had was dead.

4. Because the court charged as follows: "There is a letter of the 6th of January, 1872, in evidence from Shorter, Papot & Co.,making a proposition to the Southwestern Railroad Company, to Holt, president of the company, by which they make a proposition to it for the purpose of issuing stock to the contractors of the road to be regarded as finished in a few days and delivered over, and then that, in lieu of waiting and holding on to the stock, they would give their bond to the Southwestern Railroad Company for the completion of the road. They say they did not accept the proposition. I thought possibly they might connect that with other proof, and I let it in. That was an offer of compromise and that cannot be considered by you."

[The letter of January 6, referred to, stated that the road under construction was in a flourishing condition; that, owing to the delay in receiving their stock, Shorter, Papot & Co. were compelled to pay about $3,000.00 monthly interest on their liabilities; that some twenty miles had been completed; that, after some slight changes, which they could make in ten days, they would be ready to deliver that part of the road; they proposed to do so, and to receive a pro-

portionate·amount of stock, giving bond for the completion of the work.]

The motion was overruled, and defendants excepted.

R. F. Lyon; A. R. Lawton, for plaintiffs in error.

Lanier & Anderson, Hill & Harris, for defendants.

Warner, Chief Justice.

This was a bill filed by the complainants against the Southwestern Railroad Company, with a prayer, on the allegations contained therein, that it be decreed to issue to the complainants scrip for stock in its company to the amount of $5,300.00, and to pay to them the dividends thereon from the first of February, 1872, in pursuance of the annexed contract, which was approved by the board of directors of the Central Railroad and Banking Company of Georgia, the lessee of said Southwestern Railroad Company, and which was made a party defendant to the complainants' bill:

### EXHIBIT "A."

Macon, Ga., November 28, 1871.

*To the President and Directors of the Southwestern Railroad Company:*

Gentlemen—We hereby agree to finish up the Vicksburg and Brunswick railroad, from Eufaula to Clayton, Alabama, as follows:

To cover over all the truss bridges, finish up the grading with ditches, etc., complete the track in good order to Clayton, and build a substantial brick warehouse at Clayton, thirty-five by seventy feet, on plan used on Central railroad, with necessary depot grounds attached; put up one water tank, with fixtures complete, at place designated by Mr. Powers; and when the road is in that condition, and approved by Virgil Powers, superintendent, we will then transfer and deliver to the Southwestern Railroad Company the preferred eight per cent. stock of the Vicksburg and Brunswick Railroad Company to the extent of four thousand four hundred shares of the par value of one hundred dollars each, receiving for the same stock of the Southwestern Railroad Company of the par value of one hundred dollars per share, at the rate of one hundred and fifty shares per mile of road finished to Clayton.

Respectfully, your obedient servants,

Shorter, Papot & Co.

Whereupon it was resolved, that the company hereby accept the above proposition of Messrs Shorter, Papot & Co., and that the president and superintendent of this company carry out the details subject to the approval of the board of directors of the Central Railroad and Banking Company of Georgia.

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

True extract from the minutes of this company of this date.

JOHN T. BOSFEINTTET,
Secretary and Treasurer.

On the trial of the case, the jury, under the charge of the court, found a verdict in favor of the complainants for the sum of five thousand one hundred and forty-five dollars and thirty-five cents.   The defendants made a motion for a new trial on the several grounds therein set forth, which was overruled, and the defendants excepted.

1. The main question in controversy between the parties at the trial, was whether the complainants should account for the dividends due on the stock which was issued to them by defendants before the contract was completed, the defendants having insisted in their answers that the amount of such dividends should be allowed by way of set-off to the complainants' demand under said contract.   As a general rule, in the absence of any agreement to the contrary, the dividends due on the stock of the company would follow the ownership of the stock.

2. The defendants insist that the complainants, by their letter of the 6th of January, 1872, to the president of the Southwestern Railroad Company, proposed that the stock should be issued by the company to them before the completion of the work under the contract, and that the several letters of Messrs. Hartridge & Ketchum (who were the financial agents of the complainants in procuring and negotiating said stock) to Holt, the president of the company, as well as the replies thereto as set forth in the bill of exceptions, if the same had not been ruled out by the court, when taken in connection with the letter of the 6th of January, which was also ruled out, would have shown to the satisfaction of the jury that the complainants were to account to the defend-

ants for the dividends on the stock, in consideration that the same had been issued to them before the work was completed. There can be no dispute that the complainants did obtain the stock before they were entitled to it under the contract—in other words, they received better stock than they were entitled to under their contract, and the question naturally presents itself, upon what terms did they so receive it? As a general rule, the principal is bound by the acts of his agent, when acting within the scope of his authority in relation to the particular business entrusted to him, and the agent's authority will be construed to include all necessary and usual means for effectually executing it. A ratification of the acts of the agent by the principal may be express, or implied from the acts or silence of the principal, and such ratification will have the same effect as if originally authorized. In view of these general principles, the several letters ruled out by the court as contained in the bill of exceptions, including the letter of the 6th January, 1872, should have been admitted in evidence as tending to prove the defendants' theory of the case. All that we at present decide is, that the letters were competent evidence to have been submitted to the jury for their consideration.

3. There was no error in ruling out the proposed evidence of Holt, under the provisions of the statute, as set forth in the record, as to what he did as the friend of Gov. Shorter, and at his request, in relation to the alteration of the contract, which is now the subject matter of controversy between the parties, Shorter being dead.

4. There was no error in ruling out the proposed testimony of A. R. Lawton, Esq., as set forth in the record, who, as agent of the defendants, had a confidential interview with Gov. Shorter, one of complainants' company, in relation to making the contract now sued on, and what representations he (Shorter) made to the witness as defendants' agent in relation thereto, Shorter being dead. See *Georgia Masonic Company vs. Gibson et al.*, 52 *Ga., Rep.*, 640, and other cases.

The court erred in its charge to the jury, that the

letter of the 6th of January, 1872, could not be considered by them as evidence, because it was an offer of compromise, there being nothing in the letter going to show any such intention or purpose on the part of the complainants.

In our judgment, the court below erred in overruling the motion for a new trial on the statement of facts disclosed in the record.

Let the judgment of the court below be reversed.