THE SOUTHWESTERN RAILROAD vs. PAPOT et al., surviving partners.

1. In a suit between a railroad and a partnership, a director of the railroad is incompetent to prove negotiations in reference to the subject matter of the suit between him and a member of the firm since deceased.

2. The advertisement published in a newspaper is the best original evidence of the existence of a legal advertisement under the levy, and unless accounted for, a copy is not admissible.

3. That a legal sale has been made, and the nature of the cause of action under which it took place, are best shown by records or ex-

emplified copies thereof. Parol testimony is not admissible for that purpose, though the sale was in another state.

4. The charge of the court in this case did not fully and fairly state the defenses relied upon by the defendants.

(*a.*) To agree to account for accruing dividends on stock advanced under a contract, is not the same as to agree to pay interest on the amount of the stock to the party making the advance, even though the rate of interest may be the same per cent as the rate of dividends. In the one case the presumption that dividends follow the ownership of the stock is to be overcome, in the other it is not.

5. Complainants brought their bill against defendants to recover certain stock or its value, the consideration of which was certain work performed by them in completing a railroad and a transfer to defendants of stock therein. Defendants sought relief by cross-bill, on the ground that they had been led to purchase such stock and make such contract by the representations of complainants that the road was free of incumbrances or debts, and that the object of the contract was to obtain a controlling interest in such road free and unincumbered and operate the same in connection with their line, that the representations were false and fraudulent, that liens existed, and in fact the road had been sold thereunder:

*Held,* that to support such defense and entitle defendants to relief, it would be sufficient to show, that the misrepresentations or suppression of facts were of such a nature that the property purchased was of no value to the purchasers for the purposes for which it was bought, or that the purchasers would not have bought had they had knowledge of the defect. The defense is not rendered nugatory by a failure to prove an actual sale under the existing liens.

6, 7. Propositions of law, though correct in themselves, should not be given, if not applicable to the case.

8. Where evidence is admissible, the jury should be left to judge of its weight.

9. If complainants agreed to finish a certain railroad from Eufaula to Clayton, and to transfer to defendants a certain amount of stock therein, and in consideration thereof defendants agreed to issue to complainants stock in their road at the rate of one hundred and fifty shares per mile of road finished to Clayton, such payment to be made when the superintendent of one of defendants should approve said road as completed, then, in the absence of any further agreement, the issue of stock to the amount of one hundred and fifty shares per mile, exclusive of dividends, would be a full discharge of their liability under said contract, and, if in the issue of such stock dividends accrued or were accruing on the same, and were paid by mistake or

misunderstanding to complainants, in equity they ought to account therefor up to the date fixed for delivery.

Evidence.   Charge of Court.  Fraud.  Contracts.  Stock. Railroads Interest.    Equity.    Verdict.    Before   Judge STEWART.    Bibb Superior Court.    April Term, 1881.

To the report contained in the decision, it is only necessary to add, in connection with the first three divisions thereof, that the following were among the grounds of the motion for new trial in this case :

(1.) Because the court erred in not permitting the defendant to prove by the witness, Wm. S. Holt, what John G. Shorter, one of the firm of Shorter, Papot & Co., said to him during his lifetime and before Shorter, Papot & Co., had finished the Vicksburg and Brunswick Railroad to Clayton, in Alabama, and before the Southwestern Railroad Company had delivered any of its stock on said contract to the order of Shorter, Papot & Co., to induce the Southwestern Railroad Company to issue and deliver stock under said contract to said firm in advance of the completion of said contract, the said Holt at the time being one of the directors and president of the Southwestern Railroad Company, and Shorter now being dead.

(2.) Because the court erred in refusing to allow the defendant to prove by the witness, W. S. Holt, which they proposed to do, that John Gill Shorter, of the firm of Shorter, Papot & Co., agreed with him, as the president of the Southwestern Railroad, prior to the 29th of January, 1872, that if that company would issue and deliver to Shorter, Papot & Co., stock of its company on this contract, in advance of the completion of the road, that the firm of Shorter, Papot & Co., would allow the Southwestern Railroad Company two months' interest at the rate of 8 (eight) per cent. per annum on the amount of stock so issued and the same rate of interest on the amount of such stock not issued until the road should be completed according to contract, and that in consequence of this agree-

ment, the company did issue to the order of said firm of Shorter, Papot & Co., on the 1st of February, 1872, 2905 shares, and that the same was received by Ketchum & Hartridge on this agreement, the said William S. Holt being at the time president and director of the Southwestern Railroad Company but no party to this suit, and having no personal interest in the subject matter of the suit, said Shorter being dead.

(3.) Because the court refused to allow the defendant to prove by Alexander R. Lawton, when on the stand as a witness, after it had been shown that for the purpose of ascertaining whether there were any outstanding debts or liabilities against the Vicksburg and Brunswick Railroad Company at the time of the purchase of majority of the stock of that company from the firm of Shorter, Papot & Co. for the purpose of controlling and using that road and the said company, and before said trade was consummated that he was authorized and directed by a meeting of both companies, or a portion of both the boards of directors of the Central and Southwestern Railroad Companies, and Samuel N. Papot, also present and participating in said negotiation and a party to such arrangement, to examine into the matter and ascertain whether there were any such debts and report to said company; and that in pursuance of such direction and arrangement, he went to Alabama, and after examination found no liens and incumbrances of any kind on record to impair the rights and title that railroad company proposed to acquire by this purchase; that he, the said Lawton, then appealed to John G. Shorter, one of the firm then in life, but since dead, to know whether there were such debts, when he was informed that there were no such debts or liabilities of any kind whatever outstanding, and that he, trusting to this information, reported to the board of directors that there were none, and that on the faith of such information the trade was then consummated. The court ruling out only as illegal evidence all that occurred between said

Lawton and Shorter, and what said Shorter said to him, and that on the faith of what Shorter said to him the said trade was consummated.

(4.) Because the said court refused to allow the said Lawton to answer to this question, following the above: " Whether he made such examination and inquiry, and what information he received, if he received any such information, from the said John G. Shorter?" The said Lawton being at the time a director in the Southwestern railroad company,the attorney of the Central Railroad and Banking Company of Georgia, and the agent for the parties aboved stated, but no party to this proceeding nor otherwise personally interested in the matter;

(5.) Because the court erred in ruling out the printed paper which was offered by the defendants as the advertisement of the marshal's sale of this property of the Vicksburg and Brunswick Railroad Company, in Eufaula, Alabama, on third of February, 1879, under executions against that company in favor of the Savannah Bank and Trust Company and divers other plaintiffs in said advertisement named, issued out the circuit court of the United States for the middle district of Alabama. [The paper offered appears to have been a printed slip containing the advertisement as testified by a witness.]

(6.) Because the court erred in refusing to allow the witness, Wm. M. Wadley, to prove that the Vicksburg and Brunswick Railroad,together with all the property mentioned in said advertisement,was sold under the executions described in said advertisement, and that the same were obtained on the indorsement of the bonds of Barbour county by theVicksburg and Brunswick Railroad Company, and that the judgments and executions under which such sale was made were not within the jurisdiction of this court, but records and official papers belonging to the said circuit court of the United States for the middle district of the State of Alabama and the officers of said court.

R. F. LYON ; A. R. LAWTON, for plaintiff in error.

LANIER & ANDERSON, for defendants.

SPEER, Justice.

The defendants in error filed their bill in equity against the Southwestern Railroad Company to recover fifty-three shares of the stock of said company or the value thereof, with interest or dividends thereon from the first of February, 1872, which they allege is due them by defendant under the following contract made by them and accepted by said defendant :

"MACON, GEORGIA, November 28th, 1871.

*To the President and Directors of the Southwestern Railroad Company :*

GENTLEMEN—We hereby agree to finish the Vicksburg and Brunswick Railroad from Eufaula to Clayton, Alabama, as follows :

To cover over all the truss bridges, finish up the grading with ditches, etc., complete all the track in good order, to Clayton, and build a substantial brick warehouse at Clayton 35 by 70 feet, on plan used on Central Railroad, with necessary depot grounds attached, put up one water tank with fixtures complete, at the place designated by Mr. Powers, and when the road is in that condition approved by Virgil Powers, superintendent, we will then transfer and deliver to the Southwestern Railroad Company the preferred eight per cent. stock of the said Vicksburg and Brunswick Railroad Company to the extent of four thousand four hundred shares of the par value of one hundred dollars each, receiving for the same stock of the Southwestern Railroad of the *par value of one hundred dollars per share, at the rate of* one hundred and fifty shares per mile of road finished to Clayton.

Your obedient servants,    SHORTER, PAPOT & CO."

"Whereupon it was resolved that the Company hereby accept the above proposition of Messrs. Shorter, Papot & Co., and that the president and superintendent of the company carry out the details, subject to the approval of the board of directors of the Central Railroad and Banking Company of Georgia.

JOHN T. BOIFEUILLET,
*Secretary and Treasurer.*"

The complainants further allege that in pursuance of the contract so made they constructed a fraction over twenty-one miles of railroad, completing said Vicksburg and Brunswick Railroad to Clayton, Alabama, and in every particular complied with the terms of their contract; and all was approved by Virgil Powers, superintendent, and that they transferred to the Southwestern Railroad Company the four thousand four hundred shares of the stock of the Vicksburg and Brunswick Company, as required.

That on the 1st February, 1872, said Southwestern Railroad issued to said Ketchum & Hartridge scrip for its stock amounting to 2,430 shares by the order of complainants under said contract.

That on the 1st April, 1872, the Southwestern Railroad Company also issued its scrip for 200, and on the 15th May, 1872, scrip for twelve shares. It also issued to Eli S. Shorter, by direction of complainants, 250 shares of its stock, and to I. C. Plant, 225 shares of its stock, making the whole amount which said company transferred to complainants or their order under said contract, 3,117 shares, valued at $311,700.00, which is all that complainants, or either of said firm of Shorter, Papot & Co., have received from said company under said contract.

That the number of said shares which the firm of Shorter, Papot & Co. was entitled to receive under said contract was 3,170. Complainants did not discover until within the last six months that said company had failed to transfer or issue their additional fifty-three shares to which said firm was entitled, and very soon after discovering the error complainants called the attention of the president of the Southwestern Railroad Company thereto, and requested that it should be rectified, who refused to do anything in the premises. The fifty-three shares of undelivered stock as claimed is of the value of $5,300.00.

That the Southwestern Railroad Company not only received the 4,400 shares of stock on or about the 1st Febru-

ary, 1872, but the right to collect the accumulated interest then due thereon, amounting to $60,000.00. Complainants completed their contract on or about the 1st day of February, 1872, and it was approved by Virgil Powers as soon as completed.

The complainants claim that the Southwestern Railroad Company is indebted to them to the extent of fifty-three shares of its stock or its value at $100.00 per share, besides interest or dividends thereon from 1st of February, 1872, and this bill is filed to have this accounted for, waiving discovery. This bill was filed 17th February, 1875.

The defendant, by its answer filed 20th December, 1875, admits making the contract as stated in complainants' bill. That the complainants constructed or finished a part of the Vicksburg and Brunswick Railroad between Eufaula and Clayton, Alabama, twenty-one miles and 458 feet over, and for which complainants were entitled to or would have been entitled to, had they waited until the completion of their contract, 3,162 98–100 shares of Southwestern Railroad stock at the value of $316,298.00, but said firm, by reason of its embarrassments and necessities, induced the defendant to advance to said firm of Shorter, Papot & Co., a large portion of said stock long before the completion of the contract, on condition that said firm would *allow defendant interest at the rate of eight per centum per annum*, that being the dividend which defendant was then paying on its stock, and also the legal rate of interest in the state of Alabama where said work was being done, on such advances, from the time the same was made until the contract was completed; and on this new agreement said firm of Shorter, Papot & Co. gave their order in favor of Ketchum & Hartridge, of Savannah, on 24th January, 1872, on this defendant, for 2750 shares of its stock, as an advance on said agreement and to pay them, Ketchum & Hartridge, the balance due to them on this new agreement, said firm having previously to this date issued and delivered to said Ketchum

& Hartridge orders on this defendant for, at one time, on 29th November, 1871, 2430 shares; and for 250 shares 'in favor of Eli S. Shorter on 4th December, 1871 ; and on 8th December, 1871, to I. C. Plant for 225 shares ; and for 210 shares in favor of Ketchum & Hartridge on the 18th January, 1872, and for the balance due on the completion of the contract, making—

```
To Ketchum & Hartridge on 29th November, 1871,  .  2430  shares.
 " I. C. Plant, 8th December, 1871,  .  .  .  .  .  .  .  225    "
 " Eli S. Shorter, 4th December, 1871,  .  .  .  .  .  .  250    "
 " Ketchum & Hartridge, 18th January, 1872, and for
     balance due when contract should be completed,  .  210    "

      Total,  .  .  .  .  .  .  .  .  .  .  .  .  .  .  3115    "
```

And afterwards, on the faith of this new agreement as to interest, defendant issued to Ketchum & Hartridge

```
On 1st February, 1872, 2430 shares; par value  .  .  .  $243,000 00
On 1st February, 1872, (I. C. Plant, order,) 225 shares,
    par value  .  .  .  .  .  .  .  .  .  .  .  .  .  .     22,500 00
On 1st February, 1872, Eli S. Shorter, 250 shares,
    par value  .  .  .  .  .  .  .  .  .  .  .  .  .  .     25,000 00
On 1st April, 1872, Ketchum & Hartridge, 200 shares,
    par value  .  .  .  .  .  .  .  .  .  .  .  .  .  .     20,000 00
On 15th May, 1872, Ketchum & Hartridge, 12 shares,
    par value  .  .  .  .  .  .  .  .  .  .  .  .  .  .      1,200 00

         In all 3117 shares, par value  .  .  .  .  .  $311,700 00

On which was due for interest, according to agree-
    ment, and which was allowed defendant,    .  .        4,526 65

                                                        $316,226 66⅔
Leaving due said firm a balance  .  .  .  .  .  .  .         71 44

                                                        $316,298 10
```

Which small balance of $71.44 was allowed by said complainants to defendant for some unfinished work of the firm on the road that defendant did for them.

By this arrangement said firm received the whole dividend on said 3117 shares so issued, declared on 1st June,

v 67—44

1872, from 1st December previous, amounting in all to $12,468.00, or $7,941.34 more than they were entitled to, or would have received but for said agreement as to interest, as said contract was not completed until after said dividend was declared and if said contract had been completed before the 1st day of June, 1872, so as to have entitled said firm to stock before that time, they would have been entitled only to such dividend or proportionate part that it earned after its issue. The aforesaid arrangement and issue of stock was agreed on and accepted as a full and satisfactory settlement of this defendant's part of said agreement.

Subsequently the Central Railroad Company was made a party defendant and filed an amended answer by way of cross-bill, alleging that *it* was the real party to carry into effect the agreement and interested therein as the lessee of Southwestern Railroad Company. "That the agreement to pay complainants 150 shares of the stock of the Southwestern Railroad Company for each mile of the Vicksburg and Brunswick Railroad when finished from Eufaula to Clayton, was done by defendants solely to secure the control of said Vicksburg and Brunswick Railroad and to run it at their will and discretion in connection with said Southwestern Railroad, which it was then and now is connected with, *free of all encumbrances and debts whatever.*" "The 4,400 shares of stock transferred by complainants being the majority of stock in said road, and its possession and ownership enabled defendants to control said road." "That complainants to induce said contract assured the defendant, through its officers and agents, that they had the right to make this transfer, and that said Vicksburg and Brunswick Railroad Company *was absolutely free from all debts* and subject to no claims or liabilities whatever, and on the faith of these representations the contract was made and executed and stock of the Southwestern Railroad delivered as stated.' "Defendant alleges said representations were false, in

this, that the Vicksburg and Brunswick Railroad Company had indorsed bonds issued by Barbour county, Alabama, given for stock in said road to the amount of $300,000.00, and had delivered them to complainants, and they were put in circulation by them. That Barbour county has failed to pay interest on said bonds, and suits have been instituted against the Vicksburg and Brunswick Railroad Company on their indorsement for large amounts; alleges that complainants are insolvent and have no property, and prays for subpœna and injunction against their suit, etc.·

To this answer and cross-bill, Papot filed· an answer, " That he made agreement with the Southwestern Railroad Company, approved by the Central Railroad, referred to in cross-bill. That at time of agreement he *said nothing about the indorsement of the Barbour county bonds*, nor did he, to the best of his recollection, say the Vicksburg and Brunswick Company was free of debt," etc., etc. The defendants further amended their cross-bill, charging "that the whole inducement for them to make the purchase of 4,400 shares of the Vicksburg and Brunswick Railroad Company, was the representation made by complainants that said shares were a majority of the stock of said company, and the purchase would enable them to control the same, and that there were no outstanding liabilities or debts of said Vicksburg and Brunswick Railroad Company that would interfere with the title, use or control of said company, and on the faith of these representations the purchase was made," "charges the contrary was true, that the indorsement on said bond indebtedness existed; that suits have been instituted on said bond indorsements, judgments recovered and· said railroad sold and purchased by defendants, by reason of which defendants have been wronged and damaged, and the transaction with complainants was fraudulent and void."

·  On the issues set forth in the pleading, the case proceeded to trial, and under· the ·evidence and charge of the

court the complainants recovered a verdict for the value of the stock sued for in part, with interest thereon. Whereupon defendants below made a motion for a new trial on various grounds set forth in the record, which was overruled by the court and defendants excepted.

We do not deem it necessary to encumber this opinion and judgment by considering each of the twenty-seven grounds of error assigned in this motion for a new trial, as it is not requisite so to do in the view we take of this case.

1. We find no error in the ruling of the court in excluding from the jury so much of the testimony of the witnesses, Mr. Holt and Gen. Lawton, as is complained of in the first, second, third and fourth grounds in the motion, in which it was sought to prove conversations between the witnesses named and the deceased partner, John G. Shorter, one of the firm of complainants. We regard the question as to the admissibility of this testimony settled and adjudicated by the decision in this case when here before for review, and reported in 59 *Ga.*, 342.

2. Neither was there error in excluding the slip of printed paper purporting to be the advertisement of the marshal of the state of Alabama, in which the Vicksburg and Brunswick Railroad was advertised for sale by that officer under certain *fi. fas.* issuing from the circuit court of the United States in and for the middle district of Alabama, in favor of certain plaintiffs in *fi. fa.* against said railroad company, under the accompanying proofs as to the identity and verity of the paper slip offered. The rule, we think, has been settled by this court, that the advertisement *published in the newspaper* is the best and *original evidence* in such a case, and here there was no proof submitted to the court showing why this paper was not produced or any effort made to get it; nor do we think that it was sufficiently established that the slip offered was a true and correct copy of the original, as it appeared, if ever, in the newspaper. 2 *Ga.*, 92; 6 *Ga.*, 530.

3. Nor was it error, as set forth in the 6th ground of the motion, not to allow Wm. Wadley to prove that the Vicksburg and Brunswick road, with its appurtenances, was sold under the executions described in the advertisement, and also what was the foundation or cause of action upon which judgment and *fi. fas.* were obtained, as was sought to be done.   All this evidence existed in a more durable state and in the form of records, and should be proved by exemplified copies of the originals, where they are presumed to exist.

4. The seventh, eighth and ninth grounds of the motion may be considered together, and are:

(7.) Because the court erred in charging the jury as follows:   "Defendants file their answers and admit the contract; say the same was made and accepted, and the work done, with a small exception, and the railroad received it, and the stock of the Vicksburg and Brunswick Railroad was received under the contract, having been transferred to defendants; but they say that complainants should not recover—1st, "For the reason that they accepted the railroad before the railroad had been entirely completed; that they did some work in completing the same, and for which they should pay them," because the same is a misstatement and a total misconception of the defendants' defence.

(8.) Because the court erred in charging the jury—2nd, "That the stock of the Southwestern Railroad Company was transferred before the completion of the railroad, and that this was done under a contract between the parties, and that under this agreement the accruing dividends on the stock so transferred, which would accrue up to the time of completing and accepting the railroad, as finished, was to be allowed and accounted for in a final settlement; and defendants say that the dividends accruing on the stock so issued before the completing and accepting the railroad would amount to as much as the claim

of complainants, and they therefore say that complainants should not be allowed to recover;" because the same does not fairly and fully state the defence of defendants, either as pleaded or proved.

(9.) The court erred in charging the jury: "Defendants again allege and charge that the prime consideration in making and entering into the contract was the purchase of a controlling interest in the Vicksburg and Brunswick Railroad, free from encumbrances, by the purchase of a majority of its stock, and that they were assured that the railroad was free from all debt, claim or lien; and they say that there was outstanding a large debt over said road, and under which the road has been sold. They charge that this was a fraud, and that the same did in law relieve them from any further obligation to perform their part of the contract.

"These are in substance the statement and pleadings of the parties. These allegations are not evidence except as to admissions made—the rules of law about which I will give you before concluding the charge."

Because, 1st, the charge does not fully state the defence in the particular referred to. The defendants' claim was that the complainants represented to them that there were no debts outstanding against the Vicksburg and Brunswick Company that would impair or defeat their right to control the road, and that these said complainants, in the said negotiation for the purchase, suppressed the existence of these debts of which they well knew, and defendants did not, on the faith of which representation and their belief that no such debts existed, the trade was consummated; that such representation and suppression was false and fraudulent, and in consequence the contract or obligation of defendants was annulled, and complainants could not recover.

Is this assignment of error well taken? Were the issues made by the pleadings fairly and fully submitted to the jury by the court? The answer of the defendants "admits the contract as stated in bill, that the complainants

constructed or finished 21 miles and 458 feet of the road, for which complainants were entitled to, and would have been entitled to (had they waited until the completion of their contract) 3162 98-100 shares of Southwesten Railroad stock, of the value of $316,298, but said firm, by reason of their embarrassments and necessities, induced the defendants to *advance* to complainants a large portion of said stock long before the completion of the contract, on condition that said firm would *allow defendants interest at the rate of 8 per cent. per annum* (that being the dividend which defendant was paying on said stock, and also the legal rate of interest in the state of Alabama where said work was being done,) on such advances, from the time the same were made until the contract was completed ; and on this *new agreement*, under the order of complainants, and on the faith of this *new agreement*, as to interest, defendants issued to—

| | |
|---|---:|
| Ketchum & Hartridge, February 1st, 1872, . . . . | 2430 shares |
| I. C. Plant, February 1st, 1872, . . . . . . . . | 225 shares |
| E. S. Shorter, February 1st, 1872, . . . . . . . | 250 shares |
| Ketchum & Hartridge, April 1st, 1872, . , . . . . | 200 shares |
| Ketchum & Hartridge, May 15th, 1872, . . . . . | 12 shares |
| In all, . . . . . . . . . . . . . . . . | 3117 shares |
| Of the par value of . . . . . . . . . . . . . | $311,700.00 |
| On which was due for interest . . . . . . . . . | 4,526.65 |
| According to agreement . . . . . . . . . . . | $316,226.66 |
| Leaving due said firm a balance of . . . . . . . | $71.44 |

Which balance was allowed by complainants to defendants for some unfinished work of the firm on said road."

This was the *contract* that defendants alleged they made with complainants, and one of the defences on which they relied for recovery. Did the court present fully and truly this issue to the jury? The court charged the jury "that the stock of the Southwestern Railroad Company was transferred before the completion of the railroad, and this was done (as alleged) under a contract between the parties, and,

under this agreement, the *accruing dividends on the stock so transferred, which would accrue up to the time of completing and accepting the railroad so finished, was to be allowed and accounted* for on a final settlement, and defendants say the *dividends accruing* on the stock, so issued, before the completing and accepting said road, would amount to as much as the claim of complainants."

The error the court committed was in instructing the jury that the contract between the parties was "that complainants were to account for *accruing dividends* on the stock up to the time of completing and finishing the road, on a final settlement," whereas the contract set up by defendants was that complainants were to allow defendants *8 per cent. interest* from the time the advancements of stock were *made* up to the completion of the road on all stock so advanced before the road was completed.

To account for all dividends accruing on said stock from the 1st of December, 1871, when the dividends began to accrue, up to the completion of the road, would be a very different contract (and a much larger sum) than an agreement to pay interest at 8 per cent. from the *date of* the advancements of stock up to the completion of the road. Yet the court instructed the jury the first was the contract on which defendants relied, when in truth the last was the one which they set up in their answer and to which their proofs applied. This error is the more damaging to defendants when taken in connection with the further charge given by the court, at the request of complainants' counsel, as follows: "Under a contract to sell or transfer stocks which is silent as to dividends, the stocks carry the accruing dividends with them; or in other words, dividends follow the stock and belong to the transferee." For defendants to sustain the contract that complainants were to account for dividends (as charged by the court) on stock transferred, the proof would have to overcome *this legal presumption* "that dividends on stock transferred belong to the transferee," whereas on a con-

tract to pay interest the proof would meet with no such presumption to overcome in order to sustain the contract.

As to the other alleged defense given in charge by the court to the jury, as set forth in the seventh ground, "that complainants should not recover for the reason that the defendants did some work in completing the same for which they should pay them," we do not find, from an inspection of the record, any such defence set forth in the pleadings of the defendants below. The defendants insisted, and so alleged, that by the issue of the stock of the Southwestern Railroad Company, as set forth in the answer, and the amount due them as *interest* on said stock for advancing the same before the contract was completed, under an agreement to that effect with complainants, and the finishing of a small balance of work by defendants on said road which complainants agreed to give them credit for, the whole contract was fully satisfied and discharged by the defendants, and they owed complainants nothing.

5. It is insisted further that the court erred in charging the jury that, "As to the duty of defendants, I charge you that defendants would be bound to use care and caution in detecting defects in the property purchased, and it would be their duty to make inquiry, and to examine for liens or claims that might be outstanding against the property; but if inquiry was made, and complainants said there was none, or if complainants voluntarily, as an inducement to the trade, said there was none, defendants would have the right to rely on such statements, and if, afterwards, it turned out that such statements were not true, and defendants were misled by them, and the making such statements resulted in damage to the defendants by the loss of the property to defendants, then the complainants cannot recover."

Also because the court erred in charging the jury: 

"Even if Mr. Papot, one of the complainants, did tell

Gen. Holt that the Vicksburg and Brunswick Railroad Company owed no debts,. and it turned out that said company had indorsed bonds of Barbour county, Alabama, this would not avail as a defence to this bill, unless it has been proved that the road was sold to pay the indebtedness thus created. Proof that the road had been sold by the United States marshal, without proving that it was sold under a judgment or judgments in favor of the holder or holders of these bonds, or some of them, or the coupons of some of these bonds, is no defence to this bill, and ought not to prevent your finding for complainants.'

Which the court qualified as follows:

" Unless you find from all the evidence in the case that such sale was made on account of indorsements or debts or claims of the Vicksburg and Brunswick Railroad Company in existence at the time the stock was transferred by defendants to complainants."

. It is insisted that the ·charges given in the tenth and seventeenth grounds (here grouped together for more convenient consideration) were error—not applicable to the facts of the case, and calculated to mislead the jury. The character of the stock transferred and its power in the hands of a holder to control the Vicksburg and Brunswick Railroad property were questions equally open to both parties, and about these there was no question. But whether the company owed debts or the property was encumbered with charges that might defeat the title, the rights bargained for, or impair the use intended, was a very difficult question, and one that was peculiarly in the knowledge of the one, and not supposed to be in that of the other. The misrepresentation here alleged, or even the suppression of the fact (if established by proof), was such a fraud as vitiated the sale, if the party imposed upon so sought, or would defeat a recovery under it, if attempted to be enforced. Code, §§3172–8, 2634.

We do not think, as charged by the court, that it was necessary to entitle the defendants to relief to show that

the property had been sold or lost in consequence of this alleged misrepresentation. It is, we think, sufficient to show that the misrepresentation or suppression of fact was of such a nature as to prove that the property purchased was of no value to the purchaser for the purposes for which it was bought, or that it would be reasonable to suppose that the purchaser would not have contracted for it had it had knowledge of the existence of this defect. Code, §2654. The test made by the court of this alleged misrepresentation of complainants was that though it might be a fraudulent misrepresentation on which the defendants acted, yet it could not avail as a defence unless the road and property was sold under these debts, and the defendant thereby deprived of the use of the thing bargained for. If the debts existed at the time of this contract and continued to exist, and the great purpose and object of defendants was to buy—to acquire control of the road free of debt—then if they are defeated in this, equity would relieve them without showing the absolute loss of the property by sale under this debt. If the testimony showed further that the property purchased was sold by reason of these debts or any other existing against the road prior to the contract between the parties, when the assurance given to induce the contract was that the road was free of debt, then it would avail to discharge the defendants from liability under said contract.

6. The court further charged as set forth in the twelfth ground of the motion:

"Under a contract to sell or transfer stocks which is silent as to the dividends, the stocks carry the accruing dividends with them, or in other words, the dividends follow the stock and belong to the transferee." It is true this is a correct proposition in law, but it did not apply to the contract set up by defendants, though in full accord with the erroneous issue submitted by the court to the jury as one of the grounds of defence. Defendants did not claim that complainants were to account for the ac-

cruing dividends on the stock-advanced, which seems to have been the view of the court, but complainants were to pay interest on the shares of stock advanced from the date of advancement to the completion of the work.

7. It is likewise alleged the court erred in charging the jury: "If the written proposal in evidence, signed by Shorter, Papot & Co., and dated 28th November, 1871, was accepted by the defendants, the stock which Shorter, Papot & Co. were to receive under the contract thus created, carried with it the dividends which had accrued on it when issued, unless they, or their duly authorized agents, subsequently on some new consideration, made some different agreement as to the dividends."

The error of this charge was that it involved the same mistaken view of the defence in the case which the court had previously given, as in the last ground. It withdrew the attention of the jury from the true issue made by defendants on this subject, and substituted one not disclosed by the record.

8. Because the court erred in charging the jury: " A statement made by the president of the Southwestern Railroad Company in a letter written by him to Ketchum Hartridge to the effect that 'Shorter, Papot & Co. had agreed to pay interest,' does not of itself prove that Shorter, Papot & Co. had so agreed. The statement alone in such a letter is not sufficient proof that Shorter, Papot & Co. had agreed to pay interest. In this, as in all other matters, you should look to the whole evidence of the case."

This charge, we think, was error. The letter of W. S. Holt, president, in which the statement appeared and on which the court instructed the jury, was legal and competent evidence, as ruled when this cause was before this court heretofore, as appears in 59 *Ga.*, 342, and the effect and weight of that letter as evidence was a question for the jury, and not for the court. 60 *Ga.*, 188 ; 57 *Ga.*, 13 ;

12 *Ga.*, 253.   It was an important link in the chain of testimony produced by the defendants to sustain their answer.   To single this out and express an opinion upon its weight and effect, was error.   7 *Ga.*, 431 ; 16 *Ga.*, 38 ; 24 *Ga.*, 703.

9. Because the verdict of the jury is contrary to the following charge given by the court, at the request of the defendants, in writing :

"That while it is true that all stock on its transfer carries to the transferee all earnings or accrued dividends up to such transfers, yet if from the evidence it was the contract that the Southwestern Railroad Company should deliver to Shorter, Papot & Co. one hundred and fifty shares of the stock of the Southwestern Railroad Company for each mile of the Vicksburg and Brunswick Railroad from Eufaula to Clayton when such road was fully completed to the satisfaction of Virgil Powers, then said company, by such contract, was not bound to deliver any stock whatever to Shorter, Papot & Co. until said road was fully completed and so reported by said Virgil Powers, and then only such stock of said company as should be bearing dividends from the date of the maturity or completion of said contract."

In the absence of satisfactory proof of any agreement between complainants and defendants as to advancing stock by defendants to complainants before the completion of the road, and for complainants to pay interest thereon, and resting alone upon the written contract between the parties of date of November 28th, 1871, we are inclined to think the charge last given embraces the true rule of liability of the parties to the contract.

If complainants agreed to complete this road between Eufaula and Clayton, Alabama, for defendants, and further agreed to transfer 4400 shares of stock in said road to defendants, and in consideration thereof defendants agree to issue to complainants shares of stock in the Southwestern Railroad Company of the par value of $100

per share, at the rate of one hundred and fifty shares per mile of road finished to Clayton, "said payment of stock to be made when Virgil Powers, superintendent, (under the contract), approved said road as completed," then the issue of stock to the amount of one hundred and fifty shares per mile by defendants exclusive of dividends, would be a full discharge of their liability under said contract; and if in the issue of said stock dividends accrued or were accruing on the same, up to the day when said road was finished, complainants in equity ought to account on a settlement for the amount of dividends on the stock accrued up to said date, where the dividends were paid on account of a mistake or misunderstanding between the parties.

The respondents below, by the terms of the contract of 28th November, 1871, were to pay one hundred and fifty shares of stock per mile at the time Powers said the road was complete. And if by inadvertence, mistake, or a misunderstanding between the parties the dividends were turned over with the stock, and this is clearly made to appear, then these dividends should be accounted for by complainants.

Tested by this rule, was the verdict in accordance with the charge given? The complainant, Papot, on the stand as a witness, agreed to abide the measurement of the road as reported by Powers, the superintendent. The measurement of Powers made the road twenty-one miles and 457 feet, making the sum in money $316,298.00, at $15,000 per mile, the extent of the defendants' liability.

The evidence shows there were paid in shares of stock 3,117, at par value $311,700.00; dividends on 3,117 shares of stock from 1st December, 1871, at eight per cent. up to the date when the road was completed, say 1st April, 1872, as testified to by Papot—four months—amounts to $6,325.96., which added to the amount paid, $311,700, makes the sum complainants have received in stocks and dividends $318,025.96, when the whole liability of defen-

dants, as claimed by complainants in the case under the contract and evidence, was only $316,298.00.

As this case will be remanded for another hearing, we forbear to express any opinion as to whether the verdict is against the evidence, as set forth in the last ground of the motion, but we think it is clearly against the last charge above recited, and that the principles of equity and justice will be promoted by ordering a new trial.

Let the judgment of the court below refusing a new trial be reversed.