Reid *et al. vs.* Flippen.

JAMES J. REID *et al.*, plaintiffs in error, *vs.* T. D. FLIPPEN, defendant in error.

1. Mere delay by a creditor to sue the principal debtor until the bar of the statute of limitations has attached, as between them, does not discharge the security if he has been sued in time. The surety is not damaged by the delay, since, if he has to pay the debt, he can recover from the principal in the implied contract to hold him harmless, and the right to sue does not exist in this implied contract until the money be in fact paid by the security.

2. When in a suit to recover the purchase money of some mules, the evidence showed that the vendor made false representations as to the age of the mules, and that the vendee had relied on and acted upon said representations; it was error in the Court to charge the jury that the defendant could not set up said false representations in defense to the suit unless it further appeared that he could not at the time have discovered the truth by using the ordinary caution of a prudent trader.

3. In a suit against the securities to a promissory note, the principal not having been sued, it is not a good objection to the competency of the payee in the note as a witness on the trial, to show that the principal contractor is dead, and this is specially true if the securities were present at the contract and were sworn as witnesses on the trial.

Principal and security. Indulgence. Statute of limitations. Vendor and purchaser. False representations. Diligence. Party as witness. Before Judge PARROTT. Catoosa Superior Court. February Term, 1872.

T. D. Flippen brought complaint against Mark Lowery, C. L. Reid and James J. Reid, principals, and William Ballew and C. D. McFarland, securities, on the following promissory note, to-wit:

"$925 00.        CHATTANOOGA, September 24th, 1860.

"Fifteen months after date we promise to pay to the order of N. M. Pope, or bearer, nine hundred and twenty-five dollars, value received.

(Signed)        "MARK LOWERY,
                "C. L. REID,
                "JAMES J. REID,
                "WM. BALLEW, Security.
                "C. D. McFARLAND, Security."

The declaration was filed in office on September 7th, 1867. James J. Reid was served on September 24th, 1867, and returns of *non est inventus* made as to Mark Lowery, C. L. Reid and William Ballew. C. D. McFarland was served on September 16th, 1867.

The defendants, James J. Reid and C. D. McFarland, pleaded that the note sued on was given for fifteen mules purchased from the payee of said note, and that said payee at the time of, and before the sale, falsely and fraudulently represented that said mules were only twelve months old, when in fact they were three years old; that by reason of said false statements the purchasers were induced to buy said mules; that said mules were worth $800 00 less as they were, than if they had been of the age represented by said payee; that plaintiff took said note with full notice of the foregoing facts.

And for further plea, defendants say that they are only securities on said note; that the principals have been discharged by failure to sue them, and that they are, therefore, discharged. These pleas were filed at February term, 1870. The jury returned a verdict for the plaintiff for $600 00 principal, and $325 00 interest. The defendants moved for a new trial upon the following, among other grounds, to-wit:

1st. Because the Court erred in admitting the testimony of N. M. Pope, it appearing that C. L. Reid, one of the contracting parties, was dead.

2d. Because the Court erred in refusing to charge the jury as requested, to-wit: "That if Reid is security only on the note sued on, and if no suit was brought against the principals before January 1st, 1870, then he is discharged; that if the evidence shows that the plaintiff has failed to prosecute his claim against the principals until it is barred as to them and they are released, the securities are also released," and in charging in lieu of the above request, "that if there was a good cause of action against the sureties at the time the suit was commenced, they are not discharged by the statutory bar as to the principals since the suit was commenced."

3d. Because the Court erred in charging the jury as fol-

Reid *et al. vs.* Flippen.

lows, to-wit: "If the plaintiff has done any act by which the principal was discharged from liability, it would relieve the sureties from liability. If the suit was brought by plaintiff against the defendants when he had a valid cause of action, and the principals in the note were relieved from liability on the note after suit was brought and prior to the trial by the running of the statute of limitations, this would not be such a discharge as to relieve defendants if they are shown to be sureties.

Every man who deals with his fellow in ordinary transactions is expected to exercise ordinary caution in examining and judging the property in which he trades with reference to sign, form, color, age, appearance and other patent qualities. Traders are expected to judge when they have a fair chance to exercise their judgment. If men merely judge badly or act unwisely in their trades, the Courts of the country cannot aid them. Every trader is required to deal fairly and to avoid fraudulent representations, and if a man violates these just requirements, he violates the law, and the Courts will relieve his victim from the damaging effects of such fraudulent representations. If in a trade one man tells another that a horse is seven years old and the animal is really ten years old, and the party buying has an opportunity to examine for himself, he must, if he trades, stand by his bargain."

The motion for a new trial was overruled by the Court, and defendants excepted and assign said ruling as error upon each of the grounds aforesaid.

E. M. DODSON; W. H. PAYNE, for plaintiffs in error.

D. A. WALKER, by brief, for defendant.

McCAY, Judge.

The note sued on is a joint and several note. The holder had the right to sue all or either of the parties to it, at his pleasure. He saw fit, before the statutory bar attached, to sue the securities only. This he had a right to do, by the very

terms of the contract; nor has it ever been held that it is any wrong to the principal to fail to bring suit against him at the same time as suit is brought against the surety. True, under our law, if this be done, and a judgment be got against the principal, the surety, if he pay the money, has a right to use the judgment against the principal, but this is an advantage which comes to the surety by an act of the holder, which he may or may not do, at his option. The surety has always the right, by notice under the Code, to compel suit against the principal, but if he neglect to give the notice, he cannot complain. As we have said, the plaintiff had an undoubted right of action against the securities, alone, when this suit was brought. Does the fact that, since the bringing of the suit, the statute of limitations has barred a suit by the plaintiff against the principal destroy this right against the securities? The foundation of all the rules discharging the surety for acts or neglect of the creditor is, that these acts have injured the surety. And if the neglect of the creditor to sue the principal until the statutory bar attaches so operated as to injure the surety, I should hesitate to hold the surety bound. But, in our opinion, the attaching of the statutory bar between the principal and the creditor does not injure the security. If he be still bound and has the debt to pay, the right to recover the money paid out of the principal still exists, notwithstanding the note, the obligation to the creditor, be barred. The right of the surety arises from the date of the payment. He has no right of action until then, and his right is not on the note or original debt, but on his having paid the money for the principal's use. At the making of this original note, there was raised by the law a contract between the principal and sureties to the effect that if they, or either of them, paid the debt, he, the principal, would repay it. Until either of the sureties has paid the debt, no right of action accrues.

We decided in the case of *Ezzard vs. Worrill,* 44 *Georgia,* 629, that a surety who since 1865 had paid the principal's debt, contracted before 1865, did not become a creditor of the principal until the actual payment, and this though the debt

Reid *et al. vs.* Flippen.

was in judgment against both parties. The truth is, the payment of a note by the surety discharges it, and the action by the surety is not on the note, but for money paid. The rule is laid down in the English text books: Pitman, 196, 197; see also, Theobald on Principal and Security, on same point, without qualification, that mere delay to sue the principal does not discharge the surety. And this very sensible reason is given, that the surety has always the right to pay and sue himself: See also, the same rule in: 2 American Leading Cases, 255, and note of authorities there cited. It is true, none of those cases, so far as we have been able to examine them, are cases where the delay had resulted in the attaching of the statutory bar in favor of the principal. But the principle upon which all these cases go, is that the act of the creditor which releases the security must be some act which prevents the security from his right to pay and sue the principal himself. In Ker *vs.* Brandon, 2 Howard, (Mississippi,) 910, and in Johnson *vs.* The Planters' Bank, 4 Smead & M., 170, it was held that the failure of a creditor to present the debt to the administrator of the principal within the time required by the statute of Mississippi for presenting debts to an administrator, did not discharge the surety, and this, though by the law of Mississippi, a debt not thus presented is not payable out of the assets. And this has also been held in New Hampshire: 8 New Hampshire Reports, 389. There are some remarks by me in the case of *Turner vs. McCarthy,* 42 *Georgia,* 491, indicating a different opinion from the present decision. That case, however, stands on peculiar ground, and I am myself now satisfied that my reasoning there.is not sound.

2. We think the Court erred in his charge to the jury on this point. We find no authority for the qualification laid down by the Judge. A vendee of personal property has a right to rely on the representations of the seller. If they are of such a character as to deceive, and *he is deceived,* the seller is liable for his deception. True, if the statements are so palpably false as that they could not deceive or mislead, they are not actionable; but this is rather matter of evidence than of

law. If the buyer is, in fact, deceived by his trust in the seller's word, he has been damaged by his act. It is going too far to say that, in a sale, the buyer must look out for himself, and that he has no right to rely on the statements of the seller. A very large number of men, especially when they come to buy a horse, do not pretend to examine and trust altogether to the statements of the seller. We have looked pretty diligently, and can find no authority for this qualification to the general rule, that if the seller makes false statements, and they deceive the buyer in a material matter, he is liable for his deceit.

3. It would be grossly unfair to exclude the payee in this note, when the defendants who signed it are witnesses. The reason of the exception in the evidence Act is, that one party to a contract ought not, in a suit in which the other party (who is dead) is interested, be permitted to give his sworn statement when he cannot be met by the other side. Here, two of the original contractors are living, one of them was sworn, and all the reason of the law fails. The dead man's estate is not a party; this judgment does not bind it. The question on trial is between the plaintiff and the defendants, and they are all alive.

Judgment reversed.