AUGUSTUS L. DORTIC, plaintiff in error, *vs.* ALEXANDER E. DUGAS, defendant in error.

1. Partnership transactions with third persons which took place after the sale of his interest by one partner to another, and after the retiring partner had ceased to be a member of the firm, are not admissible in evidence against him, upon the question of the value of his interest when sold, nor upon the question of fraud or mistake in the contract of sale. And equally inadmissible are judgments rendered against the new firm, to which the retired member was no party.

2. An order of court distributing money to a mortgage in preference to an ordinary judgment, is no evidence, against a stranger, of the existence, date, amount or consideration of the mortgage, nor of its rank as compared with the judgment.

3. Declarations as to the value of a partner's interest in the partnership enterprise, not connected with any specific statement touching the property, liabilities, credit, income or resources of the firm, are not representations of a fact, but expressions of opinion only.

4. If, in the course of negotiations between two partners, pending an offer by one to sell out his interest to the other, a third partner, having better opportunities than either of them to form a correct opinion of the value of the interest in question, voluntarily expresses a pretended opinion, misrepresenting his real belief, both of the others believing him sincere when he is not, neither of these will be responsible for his want of candor, and

however much his pretended opinion (acquiesced in by both) may influence either in the final transaction, the sale will not, on that account, be set aside. It might be otherwise, if the misrepresentation related to matter of fact instead of matter of opinion.

5. An erroneous opinion, common to both parties, as to the value of a partnership interest, is not such mistake of fact as will warrant a rescission, in equity, of the sale of such interest.

6. With equal opportunities for knowing the truth, a party grossly failing to inform himself must take the consequence of his neglect.

7. A jury instructed that they had no power to rectify contracts, would nevertheless understand that they could declare the one in question rescinded for fraud, when further instructed that every man is held to the strictest integrity, and relief should be given against any advantage obtained through deceitful practices or fraudulent acts, whether committed by misrepresentation or otherwise.

8. Unless there was actual fraud in the seller, the circumstances of the present case would not warrant a rescission of the contract, even if the interest sold was of no actual value, which fact is not established by the evidence. It is not clearly shown that the value was less than the price paid, and there seems to be no evidence whatever of intentional wrong.

9. That a business was worthless when purchased, and yet was not discovered by the purchaser to be so, until more than four years thereafter, would argue great and continuous inattention on his part, or great obscurity in the subject.

Partnership. Evidence. Mortgage. Mistake. Rescission. Sale. Fraud. Before Judge GIBSON. Richmond Superior Court. January Adjourned Term, 1875.

Dortic filed his bill against Dugas, making, in brief, the following case:

Dugas induced him to enter, at Augusta, Georgia, February 14th, 1866, into a timber cutting partnership with him (Dugas,) Benjamin R. Holt and William Wallace, two strangers, whom Dugas introduced and recommended, under articles of agreement, by which the firm name was to be Holt, Dugas & Company; the partnership was to last for one year, from February 14th, 1866; Holt, Dugas and Dortic were to contribute $2,000 00 each as capital, and Holt and Wallace were to be the business managers. Operations began forthwith in South Carolina, under the personal supervision of Holt and Wallace, and Dugas resided with them at the

scene of operations. On representations of the prosperity of the business being great, and that more money was needed to make it available, the firm borrowed $5,500 00 from Dortic at various times up to January 8th, 1867, and gave him the firm notes therefor, all due February, 1868. On the 7th of February, 1867, Dortic, on the representations of Dugas and Holt that it was worth that amount, bought Dugas' interest in the firm, and paid him $4,000 00 in cash therefor. Dortic continued in business with Holt and Wallace under the firm name of Benjamin R. Holt & Company, and, under renewed representations of prosperity, lent that firm $500 00 and took its note therefor. In the fall of 1867 Dortic withdrew, and Holt and Wallace continued as the firm of Holt and Wallace, and moved to Tatnall and adjacent counties in Georgia. Here, in 1868, the firm mortgaged all its property to Guerard & Holcombe, of Savannah, for $6,501 00, Dortic having no knowledge of the transaction. In 1869 the firm of Holt & Wallace gave its note to Dortic for $6,630 00, amount of the loans previously stated, and in 1870 Dortic reduced this to judgment, but Guerard & Holcombe came in as prior mortgagees and secured $939 69, the total amount realized by the sheriff from the sale of Holt & Wallace's property. Both Holt and Wallace then left the State. Dortic has never received $1 00 of the moneys loaned by him as above stated, and only learned of Holt & Wallace's transactions after his withdrawal, shortly before the filing of his bill. Dugas must have known the real condition of the business of the firm of Holt, Dugas & Company, and the true character of Holt and Wallace when he (Dugas) was living with those parties at the scene of the firm's operations in South Carolina; he violated the obligations of partnership and good faith by not informing Dortic of the real state of affairs; he committed a legal fraud on Dortic by selling him his (Dugas') interest in Holt, Dugas & Company for $4,000 00 under false or mistaken representations of that being its value, when it was in fact worth little or nothing at the time; by like representation he (Dugas) led Dortic to continue in business with Holt and Wallace, and it

Dortic vs. Dugas.

is only and solely by Dortic's faith and confidence in Dugas that he (Dortic) has lost in these transactions the $2,000 00 put into the business of Holt, Dugas & Company, the $5,500 lent that firm, the $4,000 00 paid Dugas for his interest, and the $500 00 lent Benjamin R. Holt & Company—total, $12,-000 00. The bill then prays that the sale of Dugas' interest to Dortic be set aside, and that Dugas be ordered to pay Dortic the $4,000 00 paid for it, and interest thereon from February 7th, 1867, the time of sale, and that Dugas be further ordered to pay Dortic his (Dugas') part of the firm debt of Holt, Dugas & Company to Dortic.

In his answer Dugas admits that the partnership was formed as stated in the bill; says he (Dugas) was in no way responsible for the management or success of the business; admits that at one time he borrowed $500 00 from Dortic for the firm, and at another time advised Dortic to advance the firm $2,000 00 more, but knows of no other loans made the firm by Dortic, and states that Dortic came to the scene of operations of the firm after making it the first loan, and expressed himself as pleased with the prospect. The answer then admits that Dugas sold his interest in Holt, Dugas & Company to Dortic for $4,000 00 cash, on the 7th of February, 1867; says he (Dugas) "felt confident it was worth more," and did not care to sell, but that Holt and Dortic pressed him to do so, and that he then took a lawyer's advice and sold to Dortic as stated; that he (Dugas) wanted money to go into some other business; that at the time of the sale Dortic gave him this writing:

"AUGUSTA, GA., February 7, 1867.

"This is to certify, that for and in consideration of the sum of four thousand ($4,000 00) dollars, paid by me to Alexander E. Dugas, for his interest in the firm of Holt, Dugas & Company, I do hereby assume the said Alexander E Dugas' share of the debts and liabilities in said firm. In testimony whereof I do hereby fix my hand and seal.

(Signed)　　　　　"A. L. DORTIC.　[L.S.]"

Denies all fraud by him in the premises, and says he had great confidence in the success of the business of the firm of Holt, Dugas & Company.

On the trial the complainant Dortic testified : Has known Dugas all his life; they were boys together; witness has lived all his life continuously in Augusta; was worth $20,000 00 before he went into the firm of Holt, Dugas & Company; is not worth five cents now; went into that firm under these circumstances: Dugas came to him and said there was a fine opening in the timber business, and proposed that witness should go into a partnership of that kind with him (Dugas) and two of his friends, Benjamin R. Holt and William Wallace, recommending those parties; witness said he knew neither of the men, nor the business; Dugas then introduced Holt to witness, and Holt said they could make one hundred per cent.; witness knew nothing of the timber business then; don't know one stick of timber from another now; went into the firm; it did business on the Saltkehatchie, in South Carolina; witness made one or two flying trips there; was told by Holt and Dugas that the business was prosperous; thought so, or would not have loaned the firm money; lent it $500 00, through Dugas, on his representations that it was needed to market the firm timber; lent it $2,500 00 at another time on Holt's representations that the money was needed to make available the prosperity of the business; lent it $1,050 00 at another time, Dugas and Holt telling him it was to buy mules rendered necessary by the increasing prosperity of the business; lent it $1,450 00 at another time, Holt making like representations of prosperity; this last loan was in January, 1867; witness made all these loans on his confidence in the representations made him by Dugas and Holt that the business was flourishing; witness bought Dugas' interest in Holt, Dugas & Company under these circumstances: Dugas told him he wanted to go into some other business, and wished to sell his interest to raise means. Holt urged witness to buy Dugas' interest, saying it was worth more than $4,000 00. Dugas was standing by and heard the conversation; witness asked Dugas if he would take less than $4,000 00, and he said he would not, that it was worth more; witness believed these representations; bought the interest; paid Dugas $4,000 00 cash

Dortic *vs.* Dugas.

for it; gave Dugas the paper mentioned in the answer; witness did not know that the firm owed anybody but himself; knew they were getting advances from some firm in Charleston; had full confidence in Dugas and Holt at the time of the sale; had known Dugas longer, and his representations satisfied witness of the truth of the statement made; witness bought the interest on his full faith in Dugas; he relied on Dugas and believed his statements true; witness never knew or suspected that Dugas' interest in Holt, Dugas & Company was worthless when he bought it until some time after March, 1871; he then employed a lawyer, who did nothing; he then retained his present counsel; about the end of the partnership year of Holt, Dugas & Company, Holt came to witness and asked what about continuing or closing up the business; witness asked if it was making money; Holt said it was; witness then said, what's the use of winding up; Holt said Dugas was willing to sell out his interest for $4,000; witness has never received anything back of his loans to Holt, Dugas & Company, or any profits, interest, or income from that firm.

The respondent, Dugas, called for complainant, testified: Has known Dortic since witness was a boy; was in the firm of Holt, Dugas & Company with him; proposed that partnership to him; witness and Holt and Wallace wished to go into the timber business and neither of them having capital, witness thought of Dortic as a man of means; witness told Dortic it was a good business, and he (witness) would risk $2,000 00 in it; Dortic said he would too; witness introduced Holt to Dortic; Holt's brother married witness' cousin; witness was where the firm did business three or four or five months—not continuously; never stayed over three months at a time. The firm cut timber on the Saltkehatchie river, South Carolina; witness learned a little of the timber business while there; learned to measure timber; the firm sometimes shipped $6,000 worth of timber at a time; it did business at Charleston; witness went to Saltkehatchie to look after his interest and after his business; witness borrowed $500 00 from Dortic for

the firm; told him the firm would lose money if it didn't have it to make the timber it had cut available; Dortic came to the lumber camp; witness took him through the woods and told him the firm was doing well; witness had no doubt of the success of the business; advised Dortic to lend the firm the $1,050 for mules; advised it on the ground of furthering the prosperity of the business; witness never doubted Holt's or Wallace's integrity; don't think it a fair question to ask him his opinion of Wallace's honesty now; believes the firm lost money after he (witness) left it, and thinks it lost money all that year; while he was there thinks it made money; the firm got their supplies from Charleston; shipped their timber to Charleston; witness helped to ship some of it; never knew of any proceeds of sales coming into the firm; at the end of the year witness valued his interest at $4,000 00 or more; didn't tell Dortic what it was worth; refused to sell it for less; thought it was worth $4,000 00; Dortic tried to make witness sell; witness sold to Dortic under legal advice; consulted a lawyer, who advised him to sell—it was the best way to get out of such things; Holt said in witness' presence, when the trade was being made, that witness' interest was worth every cent of $4,000 00; Holt said this to Dortic; witness didn't contradict the statement because he believed it true; witness told Holt he wanted to sell out his interest; told him this before the sale; witness wanted to use money in a grocery business; didn't know what the profits in that business were; believed he was making one hundred per cent. on his money in the timber business; Dortic paid witness the $4,000 00 in cash; witness didn't expect to draw out his original $2,000 00, but the profits on it. Witness reiterated and testified to all the facts contained in his answer.

Dortic introduced in evidence the articles of partnership; four notes made him by Holt, Dugas & Company, April 24, 1866, for $500 00; November 16, 1866, for $2,500 00; December 5, 1866, for $1,050 00; January 8, 1867, for $1,450 00; also the paper of February 7, 1867, set out in the answer; also several letters written in 1866 from Saltkehatchie, and

other points in South Carolina, by Holt to Joseph H. Risley, Charleston, South Carolina, showing Risley acting as Holt's factor; also a letter dated Saltkehatchie, February 7, 1867, from William Wallace to Risley & Creighton, referring to them as factors for Holt and the writer, Wallace, and speaking of money then due that firm by Holt, Dugas & Company.

Dortic also put in evidence the testimony, on interrogatories, of Joseph H. Risley, taken at New York, October 20th, 1874, as follows: Witness did business as a commission merchant and factor, largely in timber, in Charleston, South Carolina, from March 1866 to 1870; in June, 1866, began to act as factor for Benjamin R. Holt, then cutting timber on Saltkehatchie river, South Carolina; in August, 1866, witness took Alfred J. Creighton as partner; the firm was called Risley & Creighton, and continued to do a factorage business for Holt & Wallace; witness and Risley & Creighton furnished supplies and advanced money to Holt & Wallace from June 4th, 1866, to February 7th, 1867, on the faith of timber to be shipped in reimbursement; during that time Holt & Wallace received cash and supplies from Risley & Creighton to the amount of $7,145 67, and sent them timber to the amount of $4,859 63, leaving a balance of $2,288 04 against them on February 7th, 1867; witness swears positively to the correctness of this account.

In addition to the above evidence, Dortic offered:

1st. Risley's answer to a ninth interrogatory, that Holt & Wallace continued, after February 7th, 1867, to obtain supplies and cash advances from Risley & Creighton, on the faith of timber to be forwarded, and that the balance against them steadily increased until when Risley & Creighton refused further dealings with them, it was $3,013 24, none of which Risley & Creighton ever obtained.

2d. A duly certified transcript of record from Tatnall superior court, showing that on the 20th March, 1871, Guerard & Holcombe, under mortgage of June 16th, 1868, for $6,501 00, obtained, under order of court, $939 60, total pro-

ceeds of sale of Holt & Wallace's property, to the exclusion of Dortic's *fi. fa.* on Holt's note to him of August 1st, 1869.

3d. A duly certified transcript of record from the United States district court for the southern district of Georgia, showing that at November rules, 1869, Risley & Creighton sued Holt & Wallace in that court for $3,013 24, balance due July 31st, 1868, on an account stated; that on the 16th of November, 1874, Holt & Wallace pleaded a set-off of $31,158 00 for timber alleged to have been sent Risley & Creighton by them November 10th, 1867, and that on the day this plea was put in, judgment was rendered in favor of Risley & Creighton for the full amount claimed; the account sued on, as set out *in extenso* in this record, began with an entry November 30th, 1867, of a balance of $3,175 12 against Holt & Wallace, and showed that from that time up to the close of the account, they had received from Risley & Creighton $1,403 68 more, making the debit $4,578 80, and had forwarded in the same period (November 30th, 1867, to July 30th, 1868,) $1,565 56 worth of lumber, leaving a balance against them of $3,013 24, as sued on.

Respondent objected to these three items of evidence. The objections were sustained by the court, and complainant excepted.

Complainant asked the court to made the following charges, which were refused, and complainant excepted: "Where one partner makes representations as to the value of another partner's interest in the partnership which are not in fact true, and that other partner stands by and confirms those representations, actively or passively, and a third partner buys the interest at the value set on it by the other two, and on his faith in the representations made him by them, and the interest at the time of such purchase is in whole or part worthless, the sale will be rescinded as having been obtained by mistake and misrepresentation, and as a legal fraud upon the third partner, and the second partner will be held, *ex æquo et bono*, to repay the money, with interest thereon from the day of sale to the third partner.

Dortic *vs.* Dugas.

" A misrepresentation made by a third person in the presence of the vendee, by which the vendor is benefitted, is ground for a rescission of the contract entered into by vendee with vendor on the faith of such misrepresentation.

" Equity will not only relieve against a contract founded in fraud that is a suppression of the truth, or a suggestion of falsehood, but also where both parties honestly labor under a mistake or misapprehension of the facts.

" As a matter of law, an instrument in the words and figures following, to-wit:

'AUGUSTA, GEORGIA, February 7th, 1867,'

'This is to certify that for and in consideration of the sum of four thousand dollars ($4,000 00,) paid by me to Alexander E. Dugas for his interest in the firm of Holt, Dugas & Company, I do hereby assume the said Alexander E. Dugas' share of the debts and liabilities in said firm. In testimony whereof I do hereby affix my hand and seal. 'A. L. DORTIC, [Seal.]'

is an instrument under seal."

The court charged the jury, amongst other things, as follows : " You may not presume or infer fraud ; it must be proven, yet being subtle, may be inferred from proven facts. You cannot rectify or make contracts for persons after they arrive at legal age, and no disability exists. If this were allowed, courts then would *perpetually sit;* yet every man in his contract should be required and held to the strictest integrity, and where any deceitful practice or fraudulent act, by misrepresentations or otherwise, is used in contracts, courts, both of law and equity, should relieve against any advantage thus obtained.

" When, however, both parties have equal opportunities of knowing and understanding the truth about any matter, and one grossly fails to inform himself and is badly worsted, be must submit to the consequences of his neglect.

" Motives are difficult of interpretation, and if from all the facts and circumstances a legal and proper motive *for gain even,* can be given for bad trades or good ones, if no actual fraud is groven, courts and juries should not interfere with contracts deliberately made and founded on good or valuable consideration."

Dortic *vs.* Dugas.

The jury returned a verdict for the defendant. The complainant moved for a new trial because of the aforesaid exclusion of testimony, the refusal to charge as requested, and the charge as given. The motion was overruled, and complainant excepted.

SALEM DUTCHER, for plaintiff in error.

HOOK & WEBB, for defendant.

BLECKLEY, Judge.

The complainant and defendant being in partnership with two others in a lumber business, the complainant purchased the defendant's interest at the agreed price of $4,000 00 cash. For more than four years thereafter he was not aware that there was any fraud or mistake in the transaction. After that lapse of time he filed his bill for a rescission, alleging that the subject matter of the contract was wholly worthless, and that the contract was the result of fraud on the part of the defendant, or of mutual mistake of fact. The jury found in favor of defendant, and the court refused a new trial.

1. The evidence offered by complainant to prove an increase of indebtedness resulting from transactions of the new firm after the defendant had sold out and withdrawn, was, we think, properly rejected. What the firm did after the defendant retired has no bearing on the value of his interest at the time of selling the same to complainant, and does not tend, in any way, to establish either fraud or mistake. The same may be said of the record of a suit and judgment in the United States court, which was also rejected. That suit was in favor of third persons, and against the new firm. The defendant in this cause was no party to it. The pleadings do not show that any of the account sued on was contracted prior to his retirement; but even if they did, the judgment could not be used to establish the truth of the account so as to affect him, he being no party to the record.

2. He is equally a stranger to the order passed by the su-

Dortic *vs.* Dugas.

perior court of Tattnall county, awarding certain money to a mortgage made by the new firm in preference to a judgment against that firm in favor of complainant. That order, as against him, would not establish the existence of the mortgage, much less the date of it or the consideration for which it was made. Even its rank as compared with the complainant's judgment, the more direct fact which it adjudicates, could not be set up by this mere order to the prejudice of one not a party to it. The truth is, that none of the evidence rejected was at all relevant to the issues on trial, and the two records were moreover objectionable as being adjudications to which the defendant here was a total stranger.

3. Declarations that defendant's interest was worth $4,000, do not stand upon the footing of statements touching the property, liabilities, credit, income or resources of the firm. They were not representations of a fact, but expressions of opinions only. Defendant valued his interest at $4,000 00 or more, but in the nature of things it must have been a mere estimate, and the complainant ought so to have understood it.

4. Holt, one of the other partners, had full acquaintance with the condition and prospects of the business, or, at all events, his opportunities were ample for that purpose. He said defendant's interest was worth $4,000 00, and defendant, being present, heard and assented to the statement. Let it be conceded that Holt had a different belief, and misrepresented his real opinion; yet, so far as appears, both of the contracting parties were alike ignorant of his duplicity. It is not shown that he spoke at the instance of one of these more than of the other. Indeed, he seems to have volunteered to express his opinion, and there is as much reason for treating him as the complainant's agent as the defendant's. Had his misrepresentation related to matter of fact, it might possibly have had a different bearing on the case.

5. One theory of the complainant's bill is, that an erroneous opinion, common to both parties as to the real value of the interest sold, especially if that interest was absolutely

Dortic *vs*: Dugas.

worthless, would be such mistake of fact as would warrant a rescission of the contract and a return of the purchase money. We think, on the contrary, that the very nature of the enterprise touching which the partnership existed, would be full notice that the value of a partner's share was contingent, and that an estimate of it made in a general way, would partake of the loose nature of conjecture rather than of the definite characteristics of fixed fact. If it were shown that certain specific *data* were used upon which to calculate value, and that, among these, were some materially different from what they were understood to be, there would be some approach to a case of mistake.

6. Even then, however, it would still be true, as charged by the court, that with equal opportunities for knowing the truth, a party grossly failing to inform himself must take the consequences of his neglect. We think the opportunities of the parties to this contract were near enough equal to make this part of the charge fully applicable to the case. Had the complainant made such investigation into the details of the business as he might and ought to have made before purchasing, he could most probably have protected himself. It was a reckless inattention to his interest to omit using the means fairly within his reach to guide him in forming an independent judgment touching the value of his bargain.

7, 8, 9. The remaining points are disposed of by what is said, at sufficient length, in the head-notes numbered 7, 8 and 9. If the interest which complainant bought from defendant was worthless, and that fact was such a hidden matter as to require more than four years for the complainant to discover it, there is a strong probability that the defendant never discovered it at all. It is certain either that there was much mystery in the business or that there was little effort to solve it.

Judgment reversed.