## Peel, trustee *vs.* Bryson.

1. Fraud which will prevent a debt from being discharged in bankruptcy, under §5117 of the revised statutes of the United States, is positive fraud, or fraud in fact, involving moral turpitude or intentional wrong, and not implied fraud, or fraud in law, which may exist without the imputation of bad faith or immorality.

(*a.*) If a debt originated in such fraud, the discharge of the defendant in bankruptcy would not protect him. Nor is the character of the claim affected or changed by having been reduced to judgment when the defendant was adjudicated a bankrupt.

(*b.*) Where a declaration alleged that the plaintiff purchased from the defendant and his partner a certain lot, for a price stated, and took a conveyance in the usual form, and containing the usual warranty of title, and charged upon them deceitful and fraudulent representations in relation to certain incumbrances, claims and liens which they knew existed upon the land, and which they concealed from the plaintiff, and by means of this fraud and concealment sold the premises to the plaintiff, whereby the plaintiff was damaged a stated amount, and process was asked calling upon the defendant to answer the plaintiff in an action on the case for deceit, the debt so sought to be enforced was one originating in fraud, and from which the bankruptcy of the defendant did not relieve him.

(*c.*) An express warranty knowingly false may be waived as a contract, and an action may be brought for deceit.

(*d.*) If the declaration were defective in not setting out with suffi-

cient certainty that the plaintiff acted on the alleged fraudulent representations, this would be a ground for demurrer, but would not be sufficient to arrest the judgment, nor would it change the entire character of the suit, so as to convert it from one *ex delicto* into one *ex contractu.*

(*e.*) Form of verdict in such cases suggested.

2. Where a declaration alleged that F. M. Jack and Thomas M. Bryson, both of the county where suit was brought, were lately partners, using the firm name and style of Jack, Bryson & Company, and the sheriff returned that he had served the defendants, Jack, Bryson & Company, in person, with a true copy of the declaration and process, such return was not void for uncertainty.

3. The fact that the limitation act of March 16, 1869, bars the right as well as the remedy, does not deprive the court of jurisdiction to hear and determine causes within its provisions. If a defendant desires to take advantage of that act, he must plead it; if he fails to do so, he waives it, and a judgment against him is good.

April 25, 1884.

Fraud. Bankruptcy. Statute of Limitations. Service. Deceit. Actions. Pleadings. Before Judge HAMMOND. Fulton Superior Court. October Term, 1883.

Reported in the decision.

GEORGE S. THOMAS; T. P. WESTMORELAND, for plaintiff in error.

L. J. WINN, for defendant.

HALL, Justice.

By consent of counsel, this cause was heard and determined by the presiding judge, upon issues both of fact and law. The affidavit of illegality contains two grounds:

(1.) That defendant in execution did not owe the debt, and was never served with process in the original suit on which the judgment was rendered from which the execution issued, and had never waived such service.

(2.) That, after the judgment was rendered, affiant was adjudged a bankrupt, and was thereafter discharged; that the judgment was a debt provable in bankruptcy, and was ex-

tinguished by the discharge.   The court, upon the facts in proof, sustained the last ground, which we shall first consider.

1. Whether the judgment in bankruptcy, discharging the affiant from the payment of debts existing previously to his adjudication, includes the claim in question, depends upon its being within the class excepted from the operation of the discharge by the act of congress.   Section 5117 of the Revised Statutes of the United States provides " that no debt created by fraud," among others named, "shall be discharged in bankruptcy."   The Supreme Court of the United States, in Neal vs. Clarke, 95 U. S., 704, decided that " fraud," as used in this section of the bankrupt act, meant positive fraud, or fraud in fact, involving moral turpitude or intentional wrong, and not implied fraud or fraud in law, which may exist without the imputation of bad faith or immorality; and that, where a party paid an executor for a portion of the assets of an estate which he purchased at a discount, but without any actual fraud, and where he was, with the executor, who failed to account therefor, made liable for a *devastavit*, and was subsequently discharged in bankruptcy, such discharge was a complete defence to an action against him for the *devastavit*.   The same court, 99 U. S., pp. 1, 7, commenting upon and quoting from this case says, " with this definition we are content. It is founded both on reason and authority. Clearly, it does not include such fraud as the law implies from the purchase of property from a debtor with intent thereby to hinder and delay his creditors in the collection of their debts.   But if it did, such a purchase does not create a debt from the purchaser to the creditors.  As between the debtor and the purchaser the sale is good, but as between a creditor and the purchaser it is void.  The purchaser does not subject himself to a liability to pay the creditors the value of what he buys; all the risk he runs is that the sale may be avoided and the property reclaimed for their benefit.   To come within the exception of the bank-

Peel, trustee, vs. Bryson.

rupt act, the debt must be created by fraud." We are, therefore, to determine whether the debt, for which the judgment was rendered in this case, was created by the actual fraud of the debtor, and originated in bad faith, such as involves " moral turpitude and intentional wrong." If such was its origin, the affiant is not protected by his discharge in bankruptcy, nor is its character in any manner affected or changed by the circumstance of its having been in judgment when the party was adjudged a bankrupt. *McAfee vs. Covington*, 71 *Ga.*, 272. The only evidence on the trial bearing on this point was the declaration on which the plaintiff obtained the judgment, from which the execution now in controversy issued.

The declaration sets forth the fact that the plaintiff purchased from the defendant and his partner, one Jack, a certain lot in the city of Atlanta for a price therein named, and took from them a conveyance therefor in the usual form, and containing the usual warranty of title, and it then goes on to charge upon them deceitful and fraudulent representations in relation to certain incumbrances, claims and liens which they knew to exist upon the land, and which they concealed from plaintiff, and, by means of this fraud and concealment, sold to the plaintiff the premises. It specified an outstanding claim on the land in favor of one Stone, which they never extinguished, and which Stone never authorized them to dispose of; and that, by reason of these fraudulent representations, plaintiff had lost great gains and profits, which he otherwise would have made and derived from his purchase, and in addition was put to a charge and expense of $425.00 in relieving the premises from the lien, claim and incumbrance of the said Stone, and he asked that process might issue calling defendants into court to answer him in an action on the case for deceit.

Our learned brother of the superior court was of opinion that the debt sued for in this action did not originate in fraud, but thought this a suit for a breach of war-

Peel, trustee, vs. Brys. ll.

ranty contained in the deed, and the recovery must have been had upon that allegation in the declaration, because the charge of fraud contained therein was insufficient to maintain the action, taken by itself; that it is insufficient, because it does not allege that the plaintiff acted on the alleged fraudulent representations made by the defendants, which is necessary before such representation can be made the foundation *per se* of the action, under §2958 of the Code, and the decision of this court in *Larey vs. Taliaferro*, 57 *Ga.*, 443, 446. We cannot concur in this view. The whole purpose of this suit, as it seems to us, was to recover damages alleged to have been sustained by reason of the false and fraudulent representations of the defendant, and we think it sufficiently appears from the statem nts that the plaintiff believed such declarations to be true, and, so believing, acted upon them. It is true that the deed, with its warranties, is set out in the declaration as matter of inducement, and that it is further stated that the defendants fraudulently sold and warranted that the property conveyed was not subject to any liens, claims and incumbrances; but this is the usual allegation in suits for deceit. See 2 Chitty's Plead., 680, 681, and note, 687 *et seq.* The case cited from 57 *Ga.* is an authority upon the point that an express warranty, knowingly false, may be waived as a contract, and an action may be brought for the deceit. In *Dye vs. Wall*, 6 *Ga.*, 584, recited in the case above, it was held by the court that, in the sale of a slave, where there is a contract of warranty, the purchaser may consider the contract as a nullity, and bring his action on the case for deceit, and in such an action it is not necessary that he should set forth the contract, and that the bill of sale, although not described in the declaration, is admissible to prove the sale.

If the declaration was defective in the respect pointed out, that would have been good ground for a demurrer, if it had been insisted upon at the trial; but such insufficiency would not, as we conceive, have been sufficient to

arrest the judgment, nor would it have the effect of changing entirely the character of the suit; it could not convert an action *ex delicto* into one *ex contractu*, which, as it strikes us, would have been the result of the view entertained by our esteemed brother of the circuit court bench.

The fact that the verdict rendered in the case was for the aggregate amount of five hundred and eighty-three dollars and seventy cents, made up of so much principal and so much interest, each specially found thereby, does not authorize or justify the conclusion that the cause of action was different from what it purported to be, as set forth in the plaintiff's declaration. The verdict will be, interpreted by the pleadings, and will not be set aside or disregarded on account of such an informality. If the declaration had contained two counts, one on the warranty of title and one for the deceit, and the party had gone to trial without an election, as was done in *Dye vs. Wall ut sup.*, on which count he would rely, then the form of this verdict would have authorized, and perhaps have compelled, the conclusion that it was found upon the count for breach of the contract, but we have seen that this declaration contained only a single count, and that was for the fraud and deceit of the defendant in making the sale and warranty, and to give the verdict effect, it must be considered as finding the defendant guilty of the wrong charged upon him. To avoid such questions in future trials, we suggest that the jury should be instructed to find the defendant guilty, and to assess against him the amount of damages for which he is liable under the proof. These views lead us to the conclusion that the debt in question was created by the actual fraud of the defendant, and that it was not barred by his discharge in bankruptcy.

2. But conceding that the court erred in his ruling on this ground of the affidavit, still it is insisted that he should have found the issue made by the other ground in favor of the defendant. The return of the sheriff that he had served the defendants, Jack, Bryson & Co.,

Peel, trustee, *vs.* Bryson.

in person, with a true copy of the declaration and process, it was said, was no return at all; it was void for uncertainty. We do think not so. Upon looking to the declaration, we find the averment, that Francis M. Jack and Thomas M. Bryson, both of the county in which the suit was brought, were lately partners, using the firm name and style of Jack, Bryson & Co. There were, therefore, only two defendants, and the return was, on the face of the pleadings, sufficiently certain. It is more specific than this return: "I have this day served the defendants with a copy of the original, at their residence," which was held to mean that each of the defendants was served at his residence, and to be sufficient. 59 *Ga.*, 607; 64 *Ib.*, 147, 4th head-note. The defendant denied, both in his affidavit and upon the trial, when he was a witness, that he had been served, but was contradicted by the return itself, and by the oath of the officer making it, who swore to its correctness.

We do not pass upon another question argued in connection with this, viz.: that this return should have been traversed by the defendant, in order to entitle him to have this ground of his affidavit considered by the court, only because it is not essential to the determination of the question made. It is not apparent that any such question was made or passed on in the trial, and we think that the court was right in virtually finding against this ground of the motion.

3. The fact that the act of March 16th, 1869, pp. 133 and 134, bars the right as well as the remedy, does not deprive the court of jurisdiction to hear and determine causes within its provisions, as was insisted, on the argument here, by the able counsel for affiant. This is the very question that the act makes it incumbent upon the court to determine, when made by the pleading, and there is no reason why a party may not expressly, or by his failure to set up the defence, as was done in the present case, waive it. That the legislature never intended to prohibit a court

v 72-23

from taking jurisdiction of, and giving judgment in, a case, where a party was willing to respond to his liabilities, or meet his obligations, legal or moral, to discharge his debts, is so evident that all reasoning upon the subject would be a mere waste of time.

Judgment reversed.