21089. CITY OF DALTON v. UNITED STATES FIDELITY & GUARANTY COMPANY *et al.*

ARGUED JANUARY 9, 1961—DECIDED FEBRUARY 9, 1961—RE-HEARING DENIED FEBRUARY 23, 1961.

*Sanford P. Carr, Stafford R. Brooke,* for plaintiff in error.

*Hardin, McCamy & Minor, Carlton McCamy, Adams & Mc-Donald,* contra.

HEAD, Presiding Justice. United States Fidelity & Guaranty Company filed its petition against the City of Dalton and Thomas Holmes to vacate an agreement for the payment of compensation under the Workmen's Compensation Act. On the trial of the case, the uncontested facts disclosed: On Sunday, December 8, 1957 (the date on which Holmes was injured), and prior thereto, Holmes was an employee of the city under the Water, Light & Sinking Fund Commission. On the date of his injury, he was performing certain work for the Crown Cotton Mills. The standard form for "Employer's First Report of Injury" was filed by the commission with its insurer, United States Fidelity & Guaranty Company, being dated December 24, 1957. In response to line one, "Name of Employer," the answer was, "Water, Light

& Sinking Fund Commission." On January 22, 1958, an agreement was entered into for the payment of compensation "until terminated in accordance with the provisions of the Workmen's Compensation Law of the State of Ga." The agreement was executed by the injured employee, the Water, Light & Sinking Fund Commission, and the insurer, United States Fidelity & Guaranty Company.

The trial resulted in a verdict and judgment for the insurer setting aside the agreement as to it, and leaving the agreement for the payment of compensation in effect as between the City of Dalton and the employee, Thomas Holmes. The city's motion for new trial as amended was "overruled" and the exception is to this judgment.

■ The judgment of a court may be set aside for fraud, accident, or mistake, unmixed with negligence on the part of the complainant. *Code* § 110-710. Counsel for the city insist that, under the evidence, United States Fidelity & Guaranty Company was guilty of such negligence as to bar a recovery, and they cite *Redwine v. McAfee,* 101 Ga. 701 (29 S. E. 428); *Young v. Young,* 188 Ga. 29 (2 S. E. 2d 622); *Strozier v. Moss,* 211 Ga. 891 (89 S. E. 2d 478); and *Charles v. Simmons,* 215 Ga. 794 (113 S. E. 2d 604).

Legal fraud is not limited to the misrepresentation of a material fact made wilfully to deceive, but may result by mistake and innocently, if acted upon by the opposite party. *Code* § 37-703. In *Smith & Shorter v. Mitchell,* 6 Ga. 458, 478, Mr. Justice Nisbet quoted from Story's Commentaries as follows: "Whether a party thus misrepresenting a fact knew it to be false, or made the assertion without knowing whether it were true or false, is wholly immaterial. For the affirmation of what one does not know or believe to be true, is equally, in morals and law, as unjustifiable as the affirmation of what is known to be positively false." Justice Nisbet then stated: "This rule of manifest equity and sound morality, we have seen, was recognized in the British Courts of Law, by some of the most learned of the Common Law Judges. It ought not to be questioned in any court professing to administer justice." See also *Reese v. Wyman,* 9 Ga. 430, 439 (7); *Woodruff & Co. v. Saul,* 70 Ga. 271 (3); *Newman*

*v. Claflin Co.,* 107 Ga. 89, 94 (32 S. E. 943); *Wellborn v. Johnson,* 204 Ga. 389, 396 (50 S. E. 2d 16).

In the present case the undisputed evidence shows that, at the time Thomas Holmes was injured, he was not working for the Water, Light & Sinking Fund Commission of the city, but had been employed to do certain work for Crown Cotton Mills, and the report by the commission of Holmes' injury was inaccurate, misleading, and untrue. However, the jury would have been authorized to find that the commission's inaccurate and untrue report of the injury was not filed in bad faith, but because of the erroneous concept that, at the time of Holmes' injury, he had been sent by the commission to do the work "on a swap-work basis." V. D. Parrott testified, in part, on behalf of the commission: "I remember it, the assumption that I had at the approximate time, that we had sent Tom and these other boys out to the Crown Cotton Mills to do the work for them, because on certain occasions in the past, we had done that, we had done that for the Crown Cotton Mills. . . On previous occasions our crew had done work for the Crown Cotton Mills, where we did it ourselves, on a swap-work basis, they would do machine shop work for us and we would do plumbing work for them, and on other occasions Hugh Hamilton would employ the men himself to do work for them on their time off, and that was what was done in this case, but I didn't know it at the time."

Ordinarily, the question of whether or not a complaining party could have ascertained the falsity of the representations by proper diligence is for a determination by the jury. *Elliott v. Marshall,* 179 Ga. 639, 640 (176 S. E. 770); *Johnson v. Sherrer,* 197 Ga. 392, 395 (29 S. E. 2d 581); *Dorsey v. Greene,* 202 Ga. 655, 659 (44 S. E. 2d 377). There is not the slightest intimation in the record that the City of Dalton, or its Water, Light & Sinking Fund Commission, could have profited in any manner by accepting liability for the injury of Thomas Holmes and reporting it to the insurance company as an obligation of the city.

Under the facts of this case, it was a question for the jury to determine whether or not the insurance company was negligent in accepting and acting upon the report of the Water, Light & Sinking Fund Commission of the City of Dalton.

■ Neither the testimony of Thomas Holmes, set out in support of the exception to an extract from the charge of the court, in ground 1 of the amended motion for new trial, nor any other testimony in the case, is sufficient to show any concealment or misrepresentation by Thomas Holmes. Holmes' testimony that he advised the representative of the Water, Light & Sinking Fund Commission as to his employment, and offered to release the city from all liability therefor, is not contradicted. It appears that he signed the agreement for the payment of compensation when the representative of the Water, Light & Sinking Fund Commission required him to do so.

The testimony of V. D. Parrott, previously set out, shows why he, as a representative of the Water, Light & Sinking Fund Commission, thought the commission was liable for Holmes' injury. As to whether Holmes was guilty of concealing or misrepresenting any facts as to his employment or injury, V. D. Parrott testified: "I don't think that Tom Holmes misrepresented anything to the city at any time; I asked Tom at the emergency room where he was working, and he told me at the time he was working at the Crown Cotton Mill."

D. F. Burnham, employed by the Water, Light & Sinking Fund Commission, testified on behalf of the commission: "No sir, Tom Holmes has never misrepresented to me that he was working for the City of Dalton and not working for the Crown Cotton Mill."

Thad Boggs, the adjuster for the United States Fidelity & Guaranty Company, testified: "No, sir, Tom Holmes has never misrepresented anything to me. He has never misrepresented anything to me with reference to who he was working for at the time or how the accident occurred."

The three witnesses who testified as above set forth were the only witnesses in the cause other than Thomas Holmes. The excerpts from the charge (and recharge) of the court, excepted to in grounds 1, 2, and 3 of the amended motion for new trial, were adjusted to the evidence, and were not error for any reason assigned.

*Judgment affirmed. All the Justices concur.*