## 48730. GIGNILLIAT v. BORG.

EBERHARDT, Presiding Judge.

Gignilliat, the appellant, and Orr contracted to purchase from Mrs. Borg certain land in Gwinnett County, delivering Orr's check for $5,000 to Mrs. Borg as earnest money. The purchasers defaulted in closing under the contract terms, and Orr's check was returned by the bank with a notation thereon "account closed." Mrs. Borg then sued Gignilliat and Orr to recover the earnest money which, under the sales contract, she was entitled to retain because of the default of the purchasers. Orr did not defend, but Gignilliat answered, asserting that the purchasers had negotiated with a son-in-law of Mrs. Borg in arriving at the sales contract and that he had represented to them that the land was zoned under Gwinnett County ordinances as R-100 for residential development, when, in fact and in truth about two-thirds of it, lying adjacent to the Chattahoochee River, was zoned F-H or flood hazard, and for that reason it could not be developed, that there had been reliance upon this representation in entering into the sales contract, and

that if the purchasers had known the true facts they would not have agreed to buy the property.

Mrs. Borg moved for summary judgment against Gignilliat, and from the grant of her motion Gignilliat appeals. *Held:*

1. Zoning is a legislative function of the county. *Barton v. Atkinson,* 228 Ga. 733 (3) (187 SE2d 835). Thus, whether land has been zoned, and if so, the uses which may be made of the land under the applicable law or ordinance is a matter of law.

2. The contract of sale was expressly made "subject to zoning ordinances affecting [the land]," and thus put the purchasers on notice of whatever ordinances Gwinnett County may have adopted applicable to the particular land. The ordinances were equally accessible to the seller and the purchasers for determining what their effect on use of the land might be.

The sales contract provided for time and opportunity to the purchasers to make full investigation concerning the land, including the making of a survey by a registered surveyor, an examination of the title by counsel and the procuring of title insurance. These investigations would logically lead to an investigation of the status of the land under the zoning ordinances, and this is particularly true since the contract was expressly made subject to them. But whether the purchasers did so or not, "with equal opportunities for knowing the truth, a party grossly failing to inform himself must take the consequences of his neglect." *Dortic v. Dugas,* 55 Ga. 484, 496 (6). See also, *Salter v. Brown,* 56 Ga. App. 792 (1) (193 SE 903); *Lewis v. Foy,* 189 Ga. 596 (6 SE2d 788).

One is presumed to know what zoning regulations do or do not permit. *Maloof v. Gwinnett County,* 231 Ga. 164, 166 (200 SE2d 749).

3. A misrepresentation as to the status of the law, or as to a matter of law, or as to its effect upon the subject matter of a contract is a statement of opinion only and can not afford a basis for a charge of fraud or deceit in the making of the contract. Thus, it has been held that a representation that a Mexican divorce would be valid did not constitute fraud or deceit, though a party had relied upon it in securing the divorce and subsequently

entering into a marriage to one who had made it *(Christopher v. Whitmire,* 199 Ga. 280 (34 SE2d 100)); nor did a representation that it would be necessary to convey title to one who engaged in growing tobacco on a farm in order to sell it under the government allotment program *(Dixon v. Dixon,* 211 Ga. 557, 562 (2) (87 SE2d 369)); nor a representation that a contract was a valid and legal one *(Beckmann v. Atlantic Refining Co.,* 53 Ga. App. 671 (187 SE 158)); nor a representation to a seller of peanuts that the purchaser must pay a processing tax thereon, and thus must reduce the price to be paid *(Salter v. Brown,* 56 Ga. App. 792, supra); nor a representation that liquor stored in a residence (rather than in a warehouse) was not subject to a government floor tax *(Bernstein v. Peters,* 69 Ga. App. 525 (26 SE2d 192)); nor was an insurance agent's representation to the insured that he had a stated coverage under his policy, when in fact no such coverage existed *(Fields v. Fire & Cas. Ins. Co. of Conn.,* 101 Ga. App. 561 (114 SE2d 540); *Brown v. Mack Trucks, Inc.,* 111 Ga. App. 164 (141 SE2d 208)); nor a representation that certain merchandise purchased out of the state would not be subject to the use tax *(Drake v. Thyer Mfg. Corp.,* 105 Ga. App. 20 (123 SE2d 457)). In each of these cases it was contended that the misrepresentation was as to a material fact upon which there had been reliance in entering into a contract, and thus constituted fraud and deceit, but we held the representation to have been one of law only, which afforded no basis for a charge of fraud and deceit.

In a situation closely analogous to that here it was held in Levin v. Kissena Manor Corp., 17 Misc. 2d 746 (184 NYS2d 863), affirmed in 10 App. Div. 2d 649 (199 NYS2d 408), that "Failure of vendors under contract to sell land, to reveal to purchasers that there had been a change in zoning classification of land, after [the] contract was signed but before the closing, could not constitute fraud where there was no confidential or fiduciary relationship between [the] parties and where [the] contract of sale provided that [the] premises were conveyed subject to zoning regulations and ordinances and amendments thereto." And see Scott v. Wilson, 15 Ill. App. 2d 456 (146 NE2d 397), where it was held that

a representation that occupancy of a basement apartment did not violate the city building ordinance was not one of fact but one of law, with respect to which the purchaser of the building had equal opportunity with the seller of informing himself, and that it afforded no basis for a claim of fraud and deceit.

Nor does the case of *Flannagan v. Clark,* 207 Ga. 345 (61 SE2d 485) require a different judgment here. In that case Mr. Flannagan was operating a stable and barn where horses were to be kept and boarded and trained for owners who kept them for riding, for fees of $50 per month, and $75 if training were required. He proposed a sale of a one-half interest in the business, including the property itself, to Mrs. Clark, representing to her that he had contracts for 150 horses and showed her horses on the premises, and detailed to her plans for enlarging the facility by construction of additional barns, a clubhouse and a booth for selling tickets, and that the property was zoned and being used for that purpose. She purchased the half interest, paying $3,846.15 in cash, received a warranty deed, and executed a deed to secure debt on the half interest back to Flannagan for $3,750, balance of the purchase price. Thereafter she learned that the horses which had been shown to her were those of Flannagan, and not those of customers, that he had no contracts for the boarding, keeping and training of horses, that the barns had previously been used for a dairy and that by a zoning resolution it had been provided that when the dairy use ceased the land would be restricted to residential use.

She brought suit against Flannagan to rescind the contract and to recover the cash payment which she had made, charging fraud and deceit on the part of Flannagan in the making of the several representations concerning the business. The matter was submitted to a jury, and a verdict for the plaintiff was returned, and this was affirmed.

There are several differences in that case and that with which we deal here. In the first place, there were false representations of fact as to the status of the business in which Flannagan was selling a half interest, and these were material. He represented that he had a

substantial business based upon contracts with owners for the keeping and boarding of 150 horses each of which would bring in from $50 to $75 per month, when, in truth and in fact he had no such contracts and had no business at all.

That he may also have made a misrepresentation concerning the zoning status, and thus expressed a legal opinion which was erroneous does not alter the situation. Moreover, a careful reading of the case reveals that no point was made as to whether this representation was one of fact or of law, nor did the court pass on it.

4. "All persons are, of course, presumed to know the law." *Carnes v. State,* 115 Ga. App. 387, 393 (154 SE2d 781); *Smith Realty Co. v. Hubbard,* 124 Ga. App. 265 (3) (183 SE2d 506). "Misrepresentations as to a question of law 'can not constitute remedial fraud, because every one is presumed to know the law and therefore can not in legal contemplation be deceived by erroneous statements of law, and such representations are ordinarily regarded as mere expressions of opinion.' [Citation]. And this is especially so where there is no confidential relationship between the parties. [Citations]." *Swofford v. Glaze,* 207 Ga. 532, 535 (63 SE2d 342).

The cases of *Fenley v. Moody,* 104 Ga. 790 (30 SE 1002), *Waldon v. Stokes,* 23 Ga. App. 428 (98 SE 367), and others of like tenor, do not require a different result. Those cases deal with a misrepresentation as to the existence of a contract relating to easements or appurtenances to land. In *Fenley* it was falsely represented that the landowners on the street abutting a lot being sold had donated frontages on their lots, setting back the lines for widening the street, and that the county commissioners had accepted the donations and had agreed to make certain improvements on it at no cost to the abutting owners. In *Waldon* a very similar false representation was made concerning improvements which the City of Atlanta would make to an abutting street pursuant to an agreement which the seller claimed to have with the city. Whether such a contract existed was, of course, a matter of fact and not of law. The claimed agreements with the county or the city have a greatly different status than a zoning ordinance, which

is legislation importing notice to all both of its existence and effect.

5. "The vendor and vendee of property are not, by virtue of such fact, placed in a confidential relationship to each other, but on the contrary are presumed to be dealing at arm's length." *Lewis v. Alderman,* 117 Ga. App. 855 (2) (162 SE2d 440).

Giving the construction required on summary judgment proceedings to the allegations of the pleadings and the assertions of the affidavits, including inferences legitimately to be drawn therefrom, it is obvious that the trial court was correct in its grant of the summary judgment.

*Judgment affirmed. Hall, P. J., Quillian, Clark and Stolz, JJ., concur; Bell, C. J., Pannell, Deen and Evans, JJ., dissent.*

ARGUED NOVEMBER 8, 1973 — DECIDED FEBRUARY 14, 1974 — REHEARING DENIED MARCH 7, 1974 —

*Rees R. Smith,* for appellant.

*Heyman & Sizemore, W. Dan Greer, William B. Brown,* for appellee.

PANNELL, Judge, dissenting.

1. I dissent from the majority opinion which decides, as the controlling principle in the case, that a representation by a seller that land he proposed to sell is zoned residential is an expression of legal opinion, rather than a statement of fact. I grant that zoning by a city or county, or any other governmental body, is a legislative function, and that the determination of whether a particular ordinance does or does not zone, may be a matter involving the construction of a law; but the mere statement that certain land is zoned for a certain use is a statement or representation of fact, not a statement of legal opinion. The Georgia cases cited in Division 3 of the majority opinion are clear examples of the expression of a legal opinion. If the seller here had stated that a certain ordinance had the legal effect of zoning the property for residential purposes, that might

be interpreted as the expression of a legal opinion, but the representation that the property here was zoned, was not as to the legal effect of a certain law or regulation, but as to a fact — this land is zoned residential.

The case of Levin v. Kissena Manor Corp., 17 Misc. 2d 746 (184 NYS2d 863), affirmed in 10 App. Div. 2d 649 (199 NYS2d 408), cited by the majority, is not authority for any rulings made by the majority opinion as this did not involve false representation or a false legal opinion made to induce the execution of the contract of sale, but involved a failure to disclose a *change* in zoning regulations occurring *after* the contract was entered into.

This case is controlled by the ruling in *Flannagan v. Clark,* 207 Ga. 345 (61 SE2d 485), where J. R. Flannagan induced Mrs. Amy P. Clark to purchase certain property after Flannagan had stated and represented to her that the property was zoned for and being used for the purpose of training and boarding horses. After the purchase, Mrs. Clark discovered that the property was not zoned for boarding and training horses and had never been so used, and could not be used for that purpose, which fact was well known to the defendant when he acquired the property. The Supreme Court of this state affirmed a jury verdict in favor of Mrs. Clark.

2. In *Fenley v. Moody,* 104 Ga. 790 (30 SE 1002), it was held: "False representations relating to easements or appurtenances to land affecting its value, which were made by the owner of such land to another with intention to deceive, and which actually did deceive him to his injury, and induce him to purchase the property for more than its value, will give a right of action of deceit to the vendee against the vendor, when the falsity of such representations could not have been ascertained by an examination of the premises purchased." This case was followed in *Walton v. Stokes,* 23 Ga. App. 428 (98 SE 367). In *Fenley v. Moody,* supra, the representations were that the property owners on both sides of a certain street or road upon which the land fronted, had by mutual agreement donated a designated number of feet of their respective frontages, and were all to set their fences back that distance, in order to widen the street; *that the county*

*commissioners had accepted the donations, had agreed to work the street, thus widen and make it a better street, and had passed an order to have it lengthened for a designated distance;* that the same had been surveyed through, and the property owners along the line of what was to be the continuation of the street had donated sufficient of their property to extend the street; that the county commissioners had also passed an order for the repairing and working of the street, in order to make it passable so that it could be traversed in convenience and safety, etc. *As against the contentions that the purchaser could have examined the records of the county commissioners, etc., and ascertained the truthfulness or the falsity of the representations, it was said:* "It is urged that, by a simple examination of the records of the county commissioners, the plaintiffs could readily have ascertained whether or not orders for widening and improving the street adjoining the property had been passed. One of the statements made by the defendant upon which the plaintiffs relied when they made their contract of purchase was, that the property owners on both sides of the street upon which the land fronted had by mutual agreement donated a designated number of feet of their respective frontages, and had agreed to set their fences back so as to widen, and thus improve the street, and enhance the value of the property bordering thereon. It is often the case that such dedications or donations for the public use are made by owners of property, and there never appears any record of the dedication. *We do not think, even if such things were necessarily matters of record, that the plaintiffs were guilty of such laches for failing to examine the records as would defeat their right of action. With the same force it might be urged that false representations made by the vendor that the property he was selling was free from all encumbrances would amount to nothing if the vendee, by an examination of court records, could have ascertained their falsity.* See *Southwestern Railroad v. Papot,* 67 Ga. 675; *Peel v. Bryson,* 72 Ga. 331; *Reid v. Flippen,* 47 Ga. 273. A party can not close his eyes to a defect in a thing purchased, so patent that by mere inspection he could have ascertained its existence; but we are not aware of any rule

of law, or decision of any ocurt, that goes to the extent of saying that one who has been imposed upon by a deceitful and false statement can have no relief unless, before acting upon such a statement, he had exhausted all means at his command to ascertain its truth. This would be, in effect, holding that scarcely under any circumstances will relief be granted to one who has been the victim of misplaced confidence in his fellow-man." See also *Braselton Bros. Inc. v. Better Maid Dairy Products, Inc.,* 222 Ga. 472, 474 (150 SE2d 620) overruling a decision by the Court of Appeals in the same case (*Braselton Bros., Inc. v. Better Maid Dairy Products, Inc.,* 113 Ga. App. 382, 386 (148 SE2d 71)), the Supreme Court saying, "We can not agree with this conclusion reached by the Court of Appeals. 'While a party must exercise reasonable diligence to protect himself against the fraud of another, he is not bound to exhaust all means at his command to ascertain the truth before relying upon the representations. Ordinarily the question whether the complaining party could ascertain the falsity of the representations by proper diligence is for determination by the jury. *Elliott v. Marshall,* 179 Ga. 639 (176 SE 770).' *Dorsey v. Green,* 202 Ga. 655, 659 (44 SE2d 377); *City of Dalton v. U. S. Fidelity &c. Co.,* 216 Ga. 602 (118 SE2d 475)."

3. The agent of the plaintiff here not only verbally misrepresented a fact but used a device to perpetrate the fraud and deter inquiry. He exhibited to the defendants a map from the tax commissioner's office showing the property was zoned residential and this map was exhibited and constantly referred to during the negotiation for the sale and purchase of the property involved here. In *Jarrett v. McKinnon,* 26 Ga. App. 694 (106 SE 809) where a vendor exhibited to a purchaser a deed which indicated that the land being sold contained 319 acres when in fact it contained only 157 acres, the court found this was a sufficient device to perpetrate the fraud and to prevent inquiry.

4. The affidavit of the plaintiff, the only evidence offered by plaintiff, contained nothing therein that sought to pierce the pleading of the defendant as to the fraud perpetrated. The plaintiff, therefore, failed to carry

the burden required on motion for summary judgment and its grant to her was therefore erroneous.

I would reverse the trial judge.

I am authorized to state that Chief Judge Bell and Judges Deen and Evans concur in this dissent.